## 17665

Henry E. PLENGE, Plaintiff-Appellant, v. Donald RUSSELL, Robert H. Chapman, Allen S. Dial, C. L. Guthrie, R. T. Thomason, Jr., M. L. Cates and A J. Cox, Members of and constituting the Board of Trustees of The Spartanburg General Hospital and Horace E. Hamilton, Administrator of Spartanburg General Hospital, Defendants-Respondents, Thomas F. JACKSON, Plaintiff-Appellant, v. Donald RUSSELL *et al.,* Defendants-Respondents. John F. BONIFACE, Plaintiff-Appellant, v. Donald RUSSELL *et al.,* Defendants-Respondents.

(115 S. E. (2d) 177)

474

*Messrs. Butler & Chapman,* of Spartanburg, *for Appellants,*

*T. Sam Means, Jr., Esq.,* of Spartanburg, *for Respondents,*

*Messrs. Butler & Chapman,* of Spartanburg, *for Appellants, in Reply.*

*M. L. Meadors, Esq.,* of Florence, *for Amicus Curiae,*

June 7, 1960.

LEGGE, Justice.

The verified complaints in these three actions are substantially identical and seek identical relief. Upon rules to show cause issued thereon, and returns thereto, the actions were by a circuit court order, unappealed from, consolidated for argument and future proceedings, without prejudice to the right of any party to present factual or legal matters differentiating any of them. This appeal is from a subsequent circuit court order sustaining a demurrer to the complaints for insufficiency. By leave of this court, South Carolina

Medical Association has filed a brief as *amicus curiae* sug-
gesting error in the order under appeal.

In each case the plaintiff is a doctor of medicine, specializ-
ing in the practice of radiology, and a member of the staff of
Spartanburg General Hospital. The defendants are the mem-
bers of the Board of Trustees, and the Administrator, of the
hospital. We summarize the other allegations of one of the
complaints as follows:

On August 6, 1958, the Board of Trustees adopted the
following resolution regulating the practice, in the Hospital,
of the plaintiff and other radiologists, the amounts to be paid
to them, and the manner of such payment:

"1. Staff open as of September 1, 1958, with no salaried
Radiologists and with the patient and attending physician to
have free choice of Radiologist.

"2. The Administration immediately will make a thorough
cost study of X-ray expense—to include cost of charity, de-
preciation of equipment, *pro rata* share of overhead, etc.

"3. Staff members to receive 40% of net profits based on
cost study above.

"4. The Board of Trustees will designate the Chief of
Radiology Service, who will be responsible for all charity
work and who will be compensated in accord with the pro-
visions of the County Supply Bill for the current fiscal year
(7/1/58—6/30/59).

"5. The above program to be strictly on a trial basis, sub-
ject to revision or cancellation by the Board at its discretion.
Provided, further, that the Administration will study the
operation of this program and keep the Board informed of
its effect on the hospital finances."

Over plaintiff's objection, the Board and the Administra-
tor have arbitrarily insisted upon controlling the amount of
compensation to be received by the plaintiff for his profes-
sional services in connection with use of the hospital's radio-
logical facilities, fixing the same, in accordance with the
resolution before mentioned, at "40% of net profits based

on cost study." Plaintiff has been further advised by the Administrator that under the provisions of paragraph 4 of Subdivision A(1) of item 5, § 1 of the Spartanburg County Supply Act for the fiscal year ending June 30, 1959 (Act No. 1194 of the 1958 Acts of the General Assembly, 50 St. at Large, p. 2708), neither he nor any other radiologist may receive more than $25,000.00 a year as compensation for professional services in the hospital. (Note: The paragraph of the county supply act to which reference is made reads as follows: "The Radiologist in charge of the department shall receive an annual salary of ten thousand dollars for directing the work of the department and for interpreting the X-ray pictures of the charity patients. He shall receive as additional compensation forty per cent of the net profit accruing to the department so long as his earnings in the aggregate do not exceed the sum of twenty-five thousand dollars.")

The defendants have refused to permit the plaintiff to practice radiology in the hospital or to utilize its radiological facilities except under the terms of the resolution of August 6, 1958, and the provisions of the county supply act before mentioned as interpreted by them.

Such action, resolution, rulings and conduct and management of the hospital on the part of the defendants are unreasonable, arbitrary, invalid and discriminatory, in that:

1. They contravene Section 7 of the Act creating the Spartanburg General Hospital (Act No. 308 of the Acts of 1917, 30 St. at Large, pp. 640, 642); Section 5 of Act No. 252 of the Acts of 1941, 42 St. at Large, pp. 362, 363; and Section 32-818 of the 1952 Code relating to county, township and municipal hospitals;

(Note:

Section 7 of Act No. 308 of 1917 reads as follows:

"In the management and operation of such hospital no discrimination shall be made against the practitioner of any school of medicine recognized by the laws of South Carolina. And all such legal practitioners shall have equal privileges in

treating patients in such hospital. All patients shall have the right to employ, at their own expense, his or her physician, and in attending any such patient in such hospital the physician, so employed by such patient, shall have the exclusive care and treatment of such patient, subject only to such rules and regulations as the Board of Hospital Trustees may prescribe."

Act No. 252 of 1941 created the Board of Trustees of the Spartanburg General Hospital, prescribed the powers, authority and duties of the Board, and repealed Act No. 254 of the Acts of 1939, which had abolished the Board and had devolved its duties upon the County Board of Spartanburg County. Section 5 of the 1941 Act is in language substantially identical with that of Section 7 of the 1917 Act before quoted.

Section 32-818 of the 1952 Code is included in Article 3 of Chapter 4 of Title 32, Article 3 being captioned "County, Township or Municipal Hospitals, Clinics or Tuberculosis Camps." Section 32-818 reads as follows: "In the management of such hospital or tuberculosis camp no discrimination shall be made against any practitioner of any school of medicine recognized by the laws of this State and all such legal practitioners shall have the privilege of treating patients in such hospital or tuberculosis camp.")

2. They unreasonably discriminate against the plaintiff and other radiologists by undertaking to regulate and control, on a cost basis, the amount of their compensation for their professional services, whereas all other doctors of medicine, such as general practitioners, surgeons, pediatricians and obstetricians are permitted to utilize the facilities of the hospital appropriate to their general or special practice and to charge and collect directly from their patients for their services without regulation or restriction by the hospital;

3. In the calculation of net profits provided to be paid to the plaintiff and other radiologists under the resolution of August 6, 1958, there are included items of costs, such as purchase and depreciation of equipment, expense of person-

nel and other items as to charity work, with the result that the plaintiff and other radiologists must not only perform charity work without charge but also pay costs of charity work as to expense of equipment, material, personnel and other like items, whereas in no other field of medicine are professional charges regulated or restricted by the hospital in such manner;

4. A greater proportion of the operating expense of the hospital than is justifiable is charged to charity, resulting in loss to the hospital and improper determination of the cost of operating the radiological department;

5. They unlawfully constitute and provide for the corporate practice of medicine.

Prayer was "for a declaratory judgment as follows:

"(1) That Plaintiff is entitled to practice radiology in the Spartanburg General Hospital and to use the facilities of such Hospital as any other medical practictioner;

"(2) That Plaintiff is entitled to make charges to his patients, both within and without the Hospital, for his professional services on a professional service basis as all other practitioners do;

"(3) That Plaintiff is entitled to use the facilities of the Spartanburg General Hospital, whether within his specialized field or otherwise, without being charged therefor;

"(4) That patients using the radiological facilities of the Hospital be charged separately for the use of such facilities, as in the case of surgical, obstetrical, pediatrical or other medical departments;

"(5) That the Hospital be required to account to the Plaintiff and remit to him any amounts collected by the Hospital since December 1, 1958, representing the professional services rendered by the Plaintiff;

"(6) That the Resolution of the Board of Trustees undertaking to impose a limit on Plaintiff's income of 40% of the net profits of the Radiological Department be adjudged invalid, discriminatory and unconstitutional;

"(7) That paragraph 4 of subdivision (A) [1] of item 5 of the Spartanburg County Supply Act of 1959 be adjudged to be discriminatory, invalid and unconstitutional;

"(8) That the present operation of the Radiological Department of the Spartanburg General Hospital is invalid and unlawful in that it represents a corporate practice of medicine;

"(9) That the Court determine a proper division of funds collected by the Hospital through the operation of its Radiological Department, said division representing a charge for the professional services of the Radiologists and a charge representing the use of the Hospital's equipment, facilities and personnel;

"(10) That the Court allow the Radiologists practicing at Spartanburg General Hospital to elect a head of the Department of Radiology in accordance with accepted rules and regulations."

And further:

"That the Court permanently enjoin the Defendants, as Members of the Board of Trustees of the Spartanburg General Hospital and as Administrator of the Hospital, and any successors to these positions, from interfering with the Plaintiff's right to practice medicine and radiology at the Spartanburg General Hospital and to use the facilities of the Hospital in his practice and to attempt to limit in any way his fees to his patients for services rendered to them, whether within or without Spartanburg General Hospital.

"That the Court issue an injunction against the Defendants pending the outcome of this action preventing them, as Members of the Board of Trustees of the Spartanburg General Hospital, or as Administrator of the Spartanburg General Hospital, or any of their successors in office, from in any way interfering with the Plaintiff in his practice of medicine, including radiology, at the Spartanburg General Hospital, from interfering in any way with his right to bill his patients for his professional services, and from in any

way interfering with his use of the Hospital's equipment and facilities."

To this and the other complaints the defendants demurred upon the ground that they failed to state facts sufficient to constitute a cause of action against them or to entitle the plaintiffs to any of the relief prayed for, in that:

"(a) The defendants, as the governing body and administrator of the Spartanburg General Hospital, a governmental agency or institution created by the State Legislature and occupying the status of a political subdivision of Spartanburg County and the State of South Carolina, are immune from suit except upon statutory or constitutional authority, and there is no such authorization under the laws and Constitution of South Carolina for the present actions or suits;

"(b) The facts and matters alleged in the complaints relate only to the method of the operation of the radiology department at the Spartanburg General Hospital and the manner and basis of remuneration paid to the radiologist in charge, which methods and remuneration are governed and controlled by statute expressly directing and requiring the practices and procedures followed by the defendants as set forth and alleged in the complaints;

"(c) The relief sought and demanded by the plaintiffs is unlawful and in direct contravention of applicable statutes and rules and regulations of the State Board of Health having the force and effect of law;

"(d) The statute governing and controlling the operation of the radiology department and the basis and manner of the remuneration of the radiologist in charge and those using its facilities at the the Spartanburg General Hospital is a constitutional and lawful exercise of legislative authority and power in the operation and management of a public or governmental institution, particularly a public and governmental hospital, is not forbidden by and does not abrogate

any pertinent or applicable provision of our State or Federal Constitution;

"(e) The complaints fail to allege or cite any definite violations of specific and applicable statutes or constitutional provisions and instead only allege generalities and conclusions, short of alleging wherein there are any statutory or constitutional violations or contraventions;

"(f) The defendant trustees as the governing body of the Spartanburg General Hospital are empowered and directed by law to adopt and enforce rules and regulations relative to the administration, management and operation of the hospital, and the manner and method of the operation of the radiology department at the hospital now in force pursuant to such power and authority are proper, lawful, and in the scope of the authority of the Trustees, not subject to challenge by the plaintiffs;

"(g) Aside from the statute governing and controlling the operation of the radiology department at the Spartanburg General Hospital, the matters, circumstances and facts alleged in the complaints are subject to arrangements, agreements or contracts, which the plaintiffs, as individuals, and the defendant trustees, as the governing body of the hospital, are free to accept or reject, and the allegations of dissatisfaction and disagreement on the part of the plaintiffs with the terms and proposals on the part of the defendant trustees do not set forth a justiciable controversy cognizable under our Declaratory Judgment Act or set forth any violations of law or contract;

"(h) The plaintiffs are under no compulsion or duress to serve as the radiologist in charge of the radiology department at the Spartanburg General Hospital or to use the radiological facilities of the hospital, and the complaints seeking the aid of the Court to enforce their demands or proposals are without authority of law;

"(i) The practices and procedures followed by the defendants in the operation of the radiology department at the

Spartanburg General Hospital, as alleged in the complaints; conform to those followed by hospitals throughout the United States and accepted and approved by public, patients, physicians and legislature, and are within the judicial notice or knowledge of the Court."

To withstand a demurrer for insufficiency, a complaint in an action for declaratory relief need show no more than the existence of a justiciable controversy between the parties. In *Foster v. Foster,* 226 S. C. 130, 83 S. E. (2d) 752, 753, appeal was from a circuit decree overruling a demurrer to a complaint that sought a declaratory judgment construing a will and adjudicating the rights of the parties thereunder. This court, affirming the judgment below, said:

"The complaint here states facts from which it is apparent that a justiciable controversy, actual or potential, between respondents on the one hand and appellants on the other, exists as to their respective rights and estates under item four of the will. The existence of such controversy is confirmed by the demurrer, which challenges the construction of this item contended for by the respondents. The question now is not whether the construction advanced by the respondents is correct, but whether they are entitled to have the will construed. Clearly they are. In *Cabell v. City of Cottage Grove,* 170 Or. 256, 130 P. (2d) 1013, 1015, 144 A. L. R. 286, the court said:

" 'The test of sufficiency of such a complaint is not whether it shows that the plaintiff is entitled to a declaration of rights in accordance with his theory, but whether he is entitled to a declaration of rights at all. Even though the plaintiff is on the wrong side of the controversy, if he states the existence of a controversy which should be settled by the court under the Declaratory Judgment Law, he has stated a cause of suit.' "

To the same effect is *Dantzler v. Callison,* 227 S. C. 317, 88 S. E. (2d) 64, 65, in which the plaintiffs, naturopathic

physicians, sought a declaratory judgment construing the statutes relating to their profession as conferring upon them the right to prescribe and administer certain drugs. See also *Southern R. Co. v. Order of Ry. Conductors of America,* 210 S. C. 121, 41 S. E. (2d) 774.

Of course a complaint is not rendered impregnable against attack by demurrer for insufficiency merely because it seeks only declaratory relief or, as here, both declaratory and coercive relief. In *South Carolina Electric & Gas Co. v. South Carolina Public Service Authority,* 215 S. C. 193, 54 S. E. (2d) 777, 787, action was brought by several privately owned electric utility companies against the defendant, a state agency, seeking to enjoin it from operating and ultimately acquiring a transmission system to be constructed with funds borrowed by an electric cooperative from the Rural Electrification Administration and to be repaid by the defendant over a period of years. In support of their claim to injunctive relief, the plaintiffs alleged that the contemplated use by the defendant of the completed transmission system: (1) was ultra vires, for lack of a certificate from the South Carolina Public Service Commission authorizing it; (2) would violate the financial provisions of the enabling act under which the defendant was created; and (3) would result in unfair and ruinous competition. Plaintiffs also prayed a declaratory judgment with respect to their rights and those of the defendant. Demurrer was upon the ground, among others, that the allegations of the complaint were insufficient to state a cause of action for the reason that the acts sought to be enjoined were authorized by law and within the discretionary power of the defendant. This ground was overruled by the trial court "for the sole reason * * * that the complaint does set forth a good cause of action for a declaratory judgment." Upon appeal this court, adverting to the background of litigation between the parties that had settled, adversely to the plaintiff's contentions, all of the issues sought to be raised by the complaint except that relating to the necessity for a certificate from the Public Service

Commission, and pointing out that the extensive legislation that had created the defendant and defined its duties and powers showed beyond doubt that such a certificate was not necessary, reversed the judgment of the lower court, saying:

"Where a complaint is devoid of allegations which are sufficient to establish the existence of a right in plaintiff arising out of the matters alleged, a cause of action for declaratory judgment is not stated, and the complaint is demurrable. That is the situation here and the demurrer on the general ground should have been sustained.

"This conclusion is supported by a quotation in the circuit order from a leading text, Anderson on Declaratory Judgments, page 28, as follows: 'Where a concrete issue is present, and there is a definite assertion of legal rights and a positive legal duty with respect thereto, which are denied by the adverse party, there is a justiciable controversy calling for the invocation of declaratory judgment action.' Here the complaint contains no 'assertion of legal rights and a positive legal duty with respect thereto', but on the contrary it affirmatively shows that respondents are entitled to no form of relief whatever."

Distinction between *South Carolina Electric & Gas Co. v. South Carolina Public Service Authority, supra,* and the case at bar is apparent. There, all of the issues sought to be raised by the complaint had already been foreclosed against the plaintiffs either by litigation or by unambiguous legislation. Here, the issues suggested do not appear to have been so foreclosed. They involve, among other things, construction and constitutionality of certain legislative enactments that have not been heretofore judicially construed; validity of certain regulations of the Spartanburg General Hospital contended by the plaintiffs to be discriminatory and invalid; and, if such regulations be held valid, the propriety of the computation of charges to charity in the calculation of the cost of operating the hospital's radiological department. In our opinion the complaint states a justiciable controversy requiring for its determination a hear-

ing on the merits. We say here, as we did in *Dantzler v. Callison, supra,* that we are not to be understood as having any opinion as to the merits of this controversy. Nor do we suggest the scope or manner of the inquiry necessary for its determination, such matters being properly for the lower court after answer to the complaint shall have been made.

The judgment is reversed, with leave to the respondents to answer the complaint within twenty days after the filing of the remittitur herein.

STUKES, C. J., and OXNER and MOSS, JJ., concur.

TAYLOR, J., did not participate.