## 21101

STATE of South Carolina, ex re. Daniel R. McLEOD, Attorney General of the State of South Carolina, Plaintiff, v. Henry G. YONCE, as Chairman and member of the Public Service Commission, Rudolph Mitchell, as Vice-Chairman and member of the Public Service Commission, F. Julian Leamond, Guy Butler, Fred A. Fuller, Jr., J. Lewis Moss and T. Basil Barrineau, as members of the Public Service Commission, and David W. Harwell and James M. Morris, as Judges of the Circuit Court and as representatives of all other circuit court judges in South Carolina, Defendants.

(261 S. E. (2d) 303)

*Atty. Gen. Daniel R. McLeod* and *Senior Asst. Atty. Gen. Karen LeCraft Henderson,* Columbia, *for plaintiff.*

*Robert T. Bockman* and *Arthur G. Fusco,* Columbia, *for defendants.*

*James P. Fields, Jr.,* and *M. Elizabeth Crum,* Columbia, *on behalf of Senate and House Judiciary Committees of the South Carolina General Assembly, amicus curiae.*

December 31, 1979.

*Per Curiam:*

This action, in the original jurisdiction of the court, was brought by the Attorney General on behalf of the State under the Uniform Declaratory Judgment Act, § 15-53-10, *et seq., Code of Laws of South Carolina* (1976) *as amended* to determine the constitutionality of Section 2 of Act 167 of the 1979 Acts of the South Carolina General Assembly. That section provides for the appointment, by the Chief Justice, of a circuit court judge to preside over certain contested public utility rate cases tried by the South Carolina Public Service Commission. The prayer for relief asked that the section be declared unconstitutional, and that defendant Circuit Judge David W. Harwell and defendant Circuit Judge James M. Morris, representing a class of circuit judges, be permanently enjoined from presiding over contested rate hearings before the Commission. Both of these circuit judges by previous order of the Chief Justice, were assigned to preside, in keeping with the terms of Section 2. They have been temporarily enjoined *pendente lite* by this court.

Additional defendants are members of the Commission, which is a part of the executive department of the state government. The circuit judge defendants admit the allegations

of the complaint and join in the prayer for relief. Members of the Commission interpose a general denial and pray that the complaint be dismissed.

Section 2 of Act No. 167 (1979), South Carolina Acts and Joint Resolutions 351 adds the following provision to Title 58 of the Code:

"Section 58-3-145. The Public Service Commission shall notify the Chief Justice of the South Carolina Supreme Court of all pending contested rate matters where the amount in controversy in such rate matters is in excess of one million dollars annually. The Chief Justice, when so notified or when otherwise requested to do so by the Chairman of the Commission, shall appoint a circuit judge to preside over the hearings in such cases. Such judges shall have full authority to rule on questions concerning the conduct of the case and the admission of evidence but shall not participate on the determination on the merits of any such case. During the conduct of such hearings, the judge shall have the same authority to control the proceedings and the conduct of participants therein as he would have in proceedings being heard in the circuit courts of the State."

It is the contention of the Attorney General that this section: (1) violates Article I, § 8 of the South Carolina Constitution in that it authorizes circuit judges of the judicial department to assume, exercise, and discharge nonjudicial functions and duties, and (2) that it violates several sections of Article V of the South Carolina Constitution, in that it vests judicial power within the executive department and outside the uniform judicial system. While we are of the view that Section 2 is incompatible with several sections of Article V, the judicial article, we need not go beyond Article I, § 8, of our Constitution to reach the conclusion that the use of circuit judges in the executive or legislative department is proscribed. Article I, § 8 provides:

"§ 8. Separation of powers.

In the government of this State, the legislative, executive, and judicial powers of the government shall be forever sepa-

rate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other."

The separation of powers mandate is followed by Articles III, IV, and V, which delineate the authority and functions of the three departments of government. Article III says:

"The legislative power of this State shall be vested in . . . the 'General Assembly of the State of South Carolina.' "

Article IV states:

"The supreme executive authority of this State shall be vested in a Chief Magistrate, who shall be styled 'The Governor of the State of South Carolina.' "

Article V specifies:

"The judicial power shall be vested in a unified judicial system, which shall include a Supreme Court, a Circuit Court, and such other courts of uniform jurisdiction as may be provided for by general law."

One of the prime reasons for separation of powers is the desirability of spreading out the authority for the operation of the government. It prevents the concentration of power in the hands of too few, and provides a system of checks and balances. The legislative department makes the laws; the executive department carries the laws into effect, and the judicial department interprets and declares the laws. There can be no doubt but that a circuit judge is a powerful member and an important voice within the judicial department. There can be no doubt but that the Public Service Commission is an important arm of the executive branch of government. It deals in matters involving millions of dollars on a regular basis.

In determining whether the use of a circuit judge as presiding officer of the Public Service Commission is constitutionally proscribed, we take judicial notice of the fact that the presiding officer of any committee, board or

commission, can have and does have a tremendous potential for influencing the result of matters being considered. Rulings, of necessity, involve many discretionary matters of importance. While we recognize the desirability of having a person knowledgeable in evidentiary law presiding over hearings which involve many millions of dollars, we thank the same may be accomplished by the legislature by requiring that the presiding officer have those qualifications normally possessed by a circuit judge. In like fashion, we recognize the desirability of giving to the presiding officer, as does § 2, ". . . authority to control the proceedings and the conduct of participants therein as [the circuit judge] would have in proceedings being heard in the circuit courts of the State." This, too, can be accomplished by legislative enactment.

To allow the Chief Justice to choose and appoint circuit judges to preside over administrative bodies infringes upon the executive department, in violation of the separation of powers mandate. To allow the legislature to direct. that a circuit judge work within the executive department infringes upon the judicial department, and limits the authority of the Chief Justice to use judges for judicial duties as required by Article V. And such is true even though the circuit judge would not be, strictly speaking, acting in a purely judicial capacity.

There is no authority save the court to determine when there is and when there is not a violation of the separation of powers provision of the constitution. Much has been written on the subject in both the cases and in the treatises to aid the court in its determination.

"Under a republican government such as ours, sovereignty lies in the people. This sovereignty is delegated by the people under the Constitution to the three departments of government, executive, judicial and legislative, which are co-ordinate and independent, and it must follow that each is supreme as to matters within its own sphere of action, subject alone. to the limitations, checks and balances provided in the

Constitution. This general rule is easy to state, but some difficulty arises in its application." *State ex rel Rawlinson v. Ansel,* 76 S. C. 395, 57 S. E. 185 (1907).

We find, in 16 Am. Jur. (2d), *Constitutional Law,* under VIII, Departmental Separation of Governmental Powers, several meaningful statements of applicable law:

"§ 210.—Principle of separation, generally.

A characteristic feature, and one of the cardinal and fundamental principles, of the American constitutional system is that the governmental powers are divided among the three departments of government, the legislative, executive, and judicial, and that each of these is separate from the others. The principle of separation of the powers of government operates in a board manner to confine legislative powers to the legislature, executive powers to the executive department, and those which are judicial in character to the judiciary. . . .

. . . The rule is generally recognized that constitutional restraints are overstepped where one department of government attempts to exercise powers exclusively delegated to another; officers of any branch of the government may not usurp or exercise the powers of either of the others, and, as a general rule, one branch of government cannot permit its powers to be exercised by another branch.

§ 212.—Importance of principle.

It has been said that the principle of the separation of the powers of government is fundamental to the very existence of constitutional government as established in the United States. The principle has also been referred to as one of the chief merits of the American system of written constitutions. It has been declared that the division of governmental powers into executive, legislative, and judicial represents probably the most important principle of government declaring and guaranteeing the liberties of the people, and that it is a matter of fundamental necessity, and is essential to the maintenance of a republican form of government. One of America's most

distinguished jurists has stated that no maxim has been more universally received and cherished as a vital principle of freedom.

## C. Judicial Powers

### § 219. Generally.

The power to maintain a judicial department is an incident to the sovereignty of each state. Under the doctrine of the separation of the powers of government, judicial power, as distingushed from executive and legislative power, is vested in the courts as a separate magistracy.

### § 223.—Impermissibility of imposition of nonjudicial functions upon judiciary.

One application of the general principle as to the separation of the powers of government is the rule which has itself been described by some authorities as a rudimentary principle of constitutional law—namely, that on judges as such no functions can be imposed except those of a judicial nature. It has been said that the policy and intent of the constitutional system is that the courts and judges not only shall not be required, but shall not be permitted, to exercise any power or to perform any trust or to assume any duty not pertaining to, or connected with, the administering of the judicial function, and that the exercise of any power or trust or the assumption of any public duty other than such as pertains to the exercise of the judicial function is not only without constitutional warrant, but is against the constitutional mandate in respect of the powers they are to exercise and the character of the duties they are to discharge. . . ."

While we have before us only the question of whether the General Assembly may direct the use of judicial manpower to preside over the Public Service Commission, it would necessarily follow that if such is permitted, circuit judges could be directed to preside over meetings at the Board of Education, the Industrial Commission, the Real Estate Commission, and the scores of other governing bodies of the state,

including the boards of trustees of the universities and colleges.

All courts have striven to uphold the separation of powers provision. At the same time, we recognize that some overlapping authority has been tolerated by reason of the minimal degree of involvement. The degree of involvement here is such that the constitution mandates that Section 2 be declared invalid.

The prayer for relief of the complaint is granted. Circuit Judges David W. Harwell and James M. Morris, and all other circuit judges, are hereby enjoined permanently from presiding over rate case hearings before the South Carolina Public Service Commission.