22810

TALL TOWER, INC. and South Carolina Educational Television Commission, Appellants vs. SOUTH CAROLINA PROCUREMENT REVIEW PANEL, Senator Hugh K. Leatherman, Senator Nikki G. Setzler, Representative Luther L. Taylor, Jr., Honorable Grady L. Patterson, Jr., Harriette F. Shaw, J. J. Hesse, Steve Bilton and Jeffery Rosenblum, Each in His Official Capacity as a Member of the South Carolina Procurement Review Panel, and Charleston Television, Inc., Respondents.

(363 S. E. (2d) 683)

Supreme Court

226

*Charles S. Porter, M. Elizabeth Crum, Celeste T. Jones*, of *McNair Law Firm, P.A.*, Columbia, and *Robert L. Clement, Jr.*, of *Young, Clement, Rivers, Tisdale, P.A.*, Charleston, *for appellant Tall Tower, Inc.*

*D. Reese Williams, III*, and *Daniel T. Brailsford*, of *Robinson, McFadden, Moore, Pope, Williams, Taylor & Brailsford, P.A.*, Columbia, *for appellant Educational Television Com'n.*

*Helen T. McFadden* and *William Hogan Brown*, Columbia, *for respondent S. C. Procurement Review Panel.*

*Dwight F. Drake, William C. Hubbard, Barbara H. McArthur*, of *Nelson, Mullins, Riley & Scarborough*, and *Jean H. Toal*, of *Belser, Baker, Barwick, Ravenel, Toal & Bender*, Columbia, *for respondent Charleston Television, Inc.*

Heard Sept. 24, 1987.

Decided Nov. 30, 1987.

HARWELL, Justice:

This action was commenced when respondent Charleston Television protested, pursuant to S. C. Code Ann. § 11-35-4210 (1986), South Carolina Educational Television Commission's (ETV's) award of a television tower lease to Tall Tower, Inc. (Tall Tower). The lease would allow ETV, a state agency, to attach its antenna to Tall Tower's 2000-foot broadcast tower. The Chief Procurement Officer (CPO) of the Division of General Services conducted a hearing, denied the protest, and upheld the ETV tower lease award. Charleston Television timely requested a review of the CPO's decision by the South Carolina Procurement Review Panel (the Panel) pursuant to S. C. Code Ann. § 11-35-4210(5) (1986). After a four day administrative hearing, the Panel reversed the CPO and ordered ETV to rebid the tower lease. Appellants Tall Tower and ETV timely petitioned the circuit court pursuant to S. C. Code Ann. § 1-23-380 (1986) to review the Panel's decision. The circuit court affirmed the Panel's order to rebid, and this appeal followed.

## FACTS

This case arose from the long-standing efforts and desires of ETV to have its Charleston television station broadcast

antenna located on a 2000-foot television tower, the maximum height allowable under federal regulations, and much higher than any existing tower in the Charleston area.

In January 1984, Tall Tower proposed that it construct the tower and lease antenna space on the tower to ETV and two commercial stations, including Charleston Television. Tall Tower and Charleston Television had extensive negotiations regarding the lease of antenna space on a 2,000-foot tower to be built on property jointly owned by the two parties. Tall Tower also negotiated during that period with ETV for lease of space. In 1985, Tall Tower and Charleston Television decided that each would proceed separately with construction of its own 2,000-foot tower.

The 1985-86 general appropriations bill allocated funds to ETV to lease space on a 2,000-foot tower in Charleston. In June 1985, ETV, in consultation with the Attorney General's office and the Property Management Office of the Budget and Control Board, began specific negotiations with WCSC (Tall Tower's parent corporation) to lease space on its 2,000-foot tower.

In August 1985, after learning that Charleston Television had determined to build its own 2,000-foot tower in the Charleston area, the Assistant Attorney General representing ETV contacted Charleston Television's attorney about leasing space on its tower. Charleston Television made a general proposal, then specific offers to lease space to ETV. The Attorney General's office then solicited new offers from Tall Tower. Both Tall Tower and Charleston Television submitted lease proposals which called for two types of optional payment plans, with the payments spread over various time periods.

ETV ultimately awarded the lease to Tall Tower under its Plan No. 5, a type payment plan which was more expensive than Charleston Television's Plan No. 1 by approximately $85,000.00 in 1986 equivalent dollars. All parties stipulate that the South Carolina Consolidated Procurement Code, S. C. Code Ann. § 11-35-10, *et seq.* (1986), applies and that this transaction is a real estate lease.

## I. CONSTITUTIONALITY

Appellants first contend that the Panel is composed and operating in violation of the separation of powers

mandated by Article I, § 8 of the South Carolina Constitution.[1] We disagree.

Article I, § 8 provides that
In the government of this State, the legislative, executive and judicial powers shall be forever separate and distinct from each other, and no person or persons exercising the functions of one of said departments shall assume or discharge the duties of any other.

Appellants argue that S. C. Code Ann. § 11-35-4410 (1986), which establishes the Panel, impermissibly authorizes legislative branch members to assume and discharge executive branch duties.

The Panel is charged with conducting an administrative review of formal protests of decisions arising from the solicitation and award of contracts pursuant to the Procurement Code. A compositional analysis of the Panel is necessary to address Appellant's separation of powers attack.

The Panel is composed of:
(a) A member of the Budget and Control Board appointed by the chairman;
(b) The chairman, or his designee, of the Procurement Policy Committee;
(c) A member of the House Labor, Commerce and Industry Committee;
(d) A member of the Senate Labor, Commerce and Industry Committee; and
(e) Five (5) members appointed by the Governor from the state at large who represent professions governed by the Procurement Code.

See S. C. Code Ann. § 11-35-4410 (2) (1986). Hence, two of the Panel's members will always be from the legislative branch; two may be legislators or constitutional officers; and five

---

[1] We previously addressed the Panel's authority in *Ex parte South Carolina Division of General Services*, 283 S. C. 555, 325 S. E. (2d) 319 (1984), holding the Panel was created merely to make recommendations to the Budget and Control Board and had no authority to resolve protests. The *South Carolina Code* has since been amended to broaden the Panel's scope of authority; the Panel is now statutorily empowered to order a contract reawarded or rebid. *See* S. C. Code Ann. § 11-35-4210 (7) (1986).

Panel members will always be executive appointees. Five members present and voting constitutes a quorum.

Appellants contend that the legislative presence on the Panel creates a *de facto* usurpation of an executive function, namely the carrying into effect of the Procurement Code enacted by the legislature. Even assuming that the Panel is an executive branch administrative agency, we believe the legislative "overlap" is constitutionally valid.

Each contest involving alleged encroachment of powers must be determined on its own facts. *State Ex Rel. McLeod v. McInnis*, 278 S. C. 307, 295 S. E. (2d) 633 (1982). Case-by-case analysis is necessary because "there is tolerated in complex areas of government of necessity from time to time some overlap of authority and some encroachment to a limited degree." *Id.* at 313, 295 S. E. (2d) at 636. We are nonetheless unconvinced by Appellant's attempt to distinguish this case from *State Ex Rel. McLeod v. Edwards*, 269 S. C. 75, 236 S. E. (2d) 406 (1977). In *Edwards*, we upheld as constitutional the State Budget and Control Board (the Board) against a similar separation of powers attack. Appellants deem critical the distinction between the presiding officers of the Board in *Edwards* and the Panel here: The Board is presided over by the Governor, the chief of the executive branch, *see* S. C. Code Ann. § 1-11-10 (1986); the Panel here was presided over by a legislator. Appellant's emphasis is misplaced.

In *Edwards*, we set forth two major criteria for determining the constitutionality of the membership of a creature of legislative enactment (e.g. the Board) which garnered membership from different branches of government: (1) the legislators should be a numerical minority, and (2) the body should represent a cooperative effort to make available to the executive department the special knowledge and expertise of designated legislators in matters related to their function as legislators. The statutory composition of the Panel comports with both these criteria.

The Panel is a nine-member body. Two legislative positions are statutorily guaranteed, with a possibility of four legislators maximum. The five executive appointees will always constitute a majority. In fact, the record reflects that in the protest giving rise to this appeal, one legislator and

four executive appointees constituted the reviewing Panel. Surely the "legislative minority" ingredient was present here.

Appellants also assert as constitutionally offensive the fact that a legislator presided over the review hearing. Appellant cites *State Ex Rel. McLeod v. Yonce*, 274 S. C. 81, 261 S. E. (2d) 303 (1979) as dispositive against the Panel on the issue of a member of one branch of government presiding over a body performing functions of a different branch. Such a characterization is overly broad, as *Yonce* is readily distinguishable.

In *Yonce*, we held unconstitutional, as violative of separation of powers, a statute allowing the Chief Justice to appoint circuit judges to preside over contested public utility rate cases tried by the Public Service Commission. The statute struck down in *Yonce* mandated the appointment of a member of the judicial department to preside over certain contested cases. The statute here in issue is quite different. The nine member Panel—including executive appointees numbering *at least* five—elects its own chairman. *See* S. C. Code Ann. § 11-35-4410 (3). That elected chairman could be an executive appointee, a legislator, or even a constitutional officer such as the state treasurer.

Appellant also argues that the two panel members from the House and Senate Labor, Commerce, and Industry Committees possess no particular special knowledge or expertise to foster cooperation with the executive branch in matters related to their function as legislators. *Edwards, supra.* In *Edwards*, we held:

> The separation of powers doctrine does not in all cases prevent individual members of the legislature from serving on administrative boards or commissions where such service falls in the realm of cooperation on the part of the legislature and there is no attempt to usurp functions of the executive department of the government.

*Id.* 269 S. C. at 83, 295 S. E. (2d) at 636, *citing State Ex Rel Schneider v. Bennett*, 219 Kan. 285, 547 P.(2d) 786, 792 (1976).

We necessarily give great weight to legislative discretion in the designation of which members of which committees

possess the requisite "special knowledge and expertise" to increase cooperation between the executive and legislative branches. Such cooperation facilitates an underlying goal of the Procurement Code: "to provide increased economy in state procurement activities and to maximize to the fullest extent practicable the purchasing values of funds of the state." S. C. Code Ann. § 11-35-20(f) (1986). We find no evidence sufficient to denigrate the legislature's conclusion that the House and Senate Labor, Commerce, and Industry Committee members possess the skills to help reach this goal.

The degree of involvement here was much closer to the cooperative spirit in matters related to legislative duties envisioned in *Edwards* than it was to prohibited legislative domination. We discern no usurpation of executive function, and accordingly hold the Panel does not violate Article I, § 8.

## II. *Due Process*

S. C. Code Ann. § 11-35-4410 (5) (1986) provides that "[t]he panel shall establish its own rules and procedures for the conduct of its business, including the holding of necessary hearings." Appellants contend they were denied the due process guaranteed them by Article I, § 3 of the South Carolina Constitution because the Panel failed to formally adopt such rules and procedures. We disagree.

The fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." *S. C. Nat'l Bank v. Central Carolina Livestock*, 289 S. C. 309, 313, 345 S. E. (2d) 485, 488 (1986), *citing Armstrong v. Manzo*, 380 U. S. 545, 552, 85 S. Ct. 1187, 1191, 14 L.Ed. (2d) 62 (1965). Due process does not mandate any particular form of procedure, but is a flexible concept changing with the circumstances. *S. C. Nat'l Bank v. Central Carolina Livestock, supra.*

We agree with the circuit court order holding Appellants were afforded due process throughout the hearings:

> No issue was raised as to the procedures on the Panel until the second day of the hearing. At that time attorneys for SCETV and Tall Tower, Inc. desired to cross-examine witnesses after the Panel had questioned the

witnesses, and the request was denied. Attorneys for SCETV and Tall Tower, Inc. had already completed a full and unhindered cross-examination of each witness. The Panel's decision to prohibit further cross-examination after its own questioning is consistent with due process procedures. The questioning of a witness is always controlled by the adjudicatory body and can be terminated as repetitive and tedious at any time subject to further judicial review for error. Review of the questions submitted in the record reveals that there was no prejudice in this procedure. The subject matter had been fully explored and the repetition after the Panel's questions would have been superfluous.

A demonstration of substantial prejudice is required to establish a due process claim. *Palmetto Alliance v. S. C. Public Service Authority*, 282 S. C. 430, 319 S. E. (2d) 695 (1984). Appellants were given notice of the issues to be determined, afforded an opportunity to be heard by presenting favorable witnesses, and were given the right to cross-examine adverse witnesses before a tribunal during four days of hearings. Appellants do not show how they were substantially prejudiced by the conduct of the proceedings; indeed, they show little more than mere disagreement with the rulings of the presiding officer.

### III. *Evaluation Criteria*

Appellants next contend that the Panel erred in basing its order to rebid on the fact that ETV failed to give Charleston Television notice of its evaluation criteria. The trial court cited Sections 11-35-1520 and 11-35-1530 in upholding the Panel's determination that, since ETV never unequivocally explained to Charleston Television what technical requirements would be considered in awarding the bid, the contract should be rebid. Appellants contend that the trial court erred in considering those Procurement Code sections because this lease was governed solely by S. C. Code Ann. § 11-35-1590 (1986). We agree.

Section 11-35-1510 reads, in pertinent part:

Unless otherwise provided by law, all State contracts shall be awarded by competitive sealed bidding pursuant to § 11-35-1520, except as provided in ... (10)

Section 11-35-1590 (Leasing of Real Property for governmental bodies.)

All parties stipulated that the tower lease is a lease for real estate of non state-owned property. Section 11-35-1590 is the specific provision of the Procurement Code which governs leasing of real property for governmental bodies. That section directs the Budget and Control Board to promulgate regulations to implement the section. The Board promulgated a regulation requiring the Division of General Services to "negotiate all leases of non-state owned real property. . . ." 23 S. C. Code Ann. Reg. 19-445.2120 (1976).

Neither Section 11-35-1590 nor Reg. 19-445.2120 contains a procedural requirement that ETV, or any other state agency awarding a lease, notify a prospective lessor of the evaluation criteria it will use. Section 11-35-1590 and the Regulation call for a negotiation process for real estate leases and are exempt from the criteria notice requirements necessary under the competitive sealed bidding of Section 11-35-1520. The Panel, therefore, placed a procedural requirement upon ETV that is simply not provided for in Section 11-35-1590 or the Regulation.

Section 1-23-380 (g) (1) of the South Carolina Administrative Procedures Act provides:

(g) . . . The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are:

(1) In violation of constitutional or statutory provisions.

Tall Tower's substantial rights were greatly prejudiced by the Panel's statutory violation. The record is replete with evidence of ETV's substantial compliance with the negotiation process mandated by Section 11-35-1590. The trial court therefore erred in failing to reverse the Panel's Order to rebid.

The Panel's Order is reversed and the Order of the CPO denying the protest of Charleston Television and affirming the lease award to Tall Tower is reinstated.

Reversed.

NESS, C. J., GREGORY and FINNEY, JJ., and ELTZROTH, Acting Associate J., concur.