338 S.C. 164 (2000)
525 S.E.2d 866
Philip S. PORTER, Consumer Advocate for the State of South Carolina, Appellant,
v.
SOUTH CAROLINA PUBLIC SERVICE COMMISSION, Alltel South Carolina, Inc., Bluffton Telephone Company, Inc., Chester Telephone Company, Farmers Telephone Cooperative, Inc., Fort Mill Telephone Company, GTE South, Inc., Hargray Telephone Company, Inc., Home Telephone Company, Inc., Horry Telephone Cooperative, Inc., Lancaster Telephone Company, Lockhart Telephone Company, McClellanville Telephone Company, Norway Telephone Company, Palmetto Rural Telephone Cooperative, Inc., Piedmont Rural Telephone Cooperative, Inc., Pond Branch Telephone Company, Ridgeway Telephone Company, Rock Hill Telephone Company, Sandhill Telephone Cooperative, Inc., St. Stephen Telephone Company, and West Carolina Rural Telephone Cooperative, Inc., Respondents.
No. 25053.
Supreme Court of South Carolina.
Heard December 15, 1999.
Decided January 24, 2000.
Rehearing Denied March 9, 2000.
*166 Philip S. Porter, Nancy Vaughn Coombs, and Elliott F. Elam, Jr., of S.C. Department of Consumer Affairs, of Columbia, for appellant.
F. David Butler, of Columbia, for respondent S.C. Public Service Commission.
M. John Bowen, Margaret M. Fox, and Robert T. Bockman, all of McNair Law Firm, P.A., of Columbia, for respondent Telephone Companies.
MOORE, Justice:
This is a telephone rate case. The Consumer Advocate appeals on the ground rate increases were ordered without adequate notice to the public. We reverse and remand.

FACTS
In May 1996, the legislature enacted S.C.Code Ann. § 58-9-280(L) and (M) (Supp.1998) to facilitate the change to a competitive market for local telephone services. This legislation would enable incumbent local exchange carriers to lower their intrastate toll-switched access rates, which are the rates paid by long-distance carriers to access the local network, by providing a mechanism to offset the resulting loss of revenue to the local exchange carriers.
Local exchange carriers that elected to participate would lower their access rates to the level of rates charged by the largest local exchange carrier, BellSouth. To help offset the local exchange carriers' resulting loss of revenue, § 58-9-280(M) provided for the Interim Local Exchange Carrier Fund (Fund) to be established by December 31, 1996. Long distance companies that received lowered access rates from the participating local exchange carriers were required to contribute to the Fund in proportion to the amount of the rate reduction they received. Disbursements from the Fund would then be made to the local exchange carriers to offset their loss of revenue.
*167 In addition to disbursements from the Fund, subsection (L) provides that the Public Service Commission (PSC) shall allow the adjustment of other rates charged by participating local exchange carriers in order to offset their lost revenue from lowered access rates.[1]
In August 1996, the PSC notified incumbent local exchange carriers of the Fund's establishment and that access rate revenue loss would be recovered by (1) increases in other rates (not to exceed statewide average rates) and (2) recovery from the Fund. Local exchange carriers electing to participate in lowered access rates were to notify the PSC of this intention, provide financial information regarding lost access rate revenues, and indicate which method of recovery they would use.
On December 16 and 17, 1996, the PSC held a hearing regarding disbursements from the Fund and proposed rate adjustments for the twenty-five local exchange carriers that elected to participate. The Consumer Advocate objected on the ground proper notice of rate increases had not been given to the public. The PSC overruled the objection by a vote of five to two. On December 31, the PSC issued its order making distributions from the Fund and adjusting rates for the twenty-one participating local exchange carriers who are respondents in this appeal (hereinafter "Telephone Companies").
On appeal, the circuit court affirmed. It found notice was not required because the rate adjustments for participating local exchange carriers in this case merely offset revenue losses and were therefore "revenue neutral." Further, the circuit court concluded that in any event, the newspaper notice published before the hearing was adequate notice.

ISSUES
1. Is notice to the public required in this case?

*168 2. Was the notice given adequate?
3. Has prejudice been shown?

DISCUSSION

1. Is notice required?
Under S.C.Code Ann. § 58-9-520 (Supp.1998), a telephone utility seeking a new rate that affects its general body of subscribers must give the PSC thirty days' notice of its intent to file for a rate change and must, after the thirty days, file a schedule of its proposed changes. Telephone Companies did not comply with this notice time line. Under S.C.Code Ann. § 58-9-530 (1976), however, the thirty-day notice may be dispensed with as follows:
The Commission, for good cause shown, may allow changes in rates without requiring the thirty days' notice under such conditions as it may prescribe, except that when changes in general schedules of rates and charges are involved, before they may become effective, notice to the public of such proposed changes shall be given by publication thereof once a week for two consecutive weeks in newspapers of general circulation in the territory involved and a hearing held thereon. All such changes shall be immediately indicated upon its schedules by such telephone utility.
(emphasis added).
The Consumer Advocate argues the circuit court erred in finding notice was not required in this case. We agree.
First, there is nothing in § 58-9-280 exempting from the general notice requirements any proceeding under subsections (L) and (M) regarding local exchange carriers and participation in the Fund. Further, under § 58-9-530, the general notice requirements cannot be waived by the PSC if "changes in general rates and charges" are involved unless the specified newspaper publication is given. In this case, the PSC ordered rate adjustments in residential touch tone and zone charges, and in business touch tone and zone charges. These adjustments qualify as "changes in general rates and charges."
Moreover, the fact that these rate adjustments were "revenue neutral" to Telephone Companies does not excuse the public notice requirements. Rate increases are of primary *169 concern to the public and are the essential reason for requiring notice. In this case, substantial rate increases were ordered over a period of five years in amounts as high as 104% of the current rates. Since changes in general rates are involved, the notice provision of § 58-9-530 requiring publication applies in this case.

2. Adequacy of notice
On December 6 and 13, 1996, a notice was published in several newspapers identifying the companies involved and announcing a public hearing "concerning the proposed rate adjustments filed" by them. The circuit court affirmed the PSC's ruling that this notice was adequate. The Consumer Advocate contends this was error. We agree.
Section 58-9-530 requires that "changes in general schedules of rates and charges" may not become effective until "such proposed changes shall be given by publication." This statutory provision clearly envisions notice of what changes in rates are sought. The notice in this case references only "rate adjustments" and does not even specify that these adjustments include increases. In context, the notice reads:
With the passage of House Bill 4694, which was signed by the Governor and became law on May 29, 1996, the Public Service Commission is required, not later than December 31, 1996, to establish an Interim Local Exchange Carrier (LEC) Fund. The purpose of this fund is to address the revenue impact on incumbent local exchange carriers electing to reduce toll switched access rates.

In response to this obligation the Public Service Commission of South Carolina has received notification and financial impact statements from the following Local Exchange Carriers concerning their participation in the Interim LEC Fund at this time....
A copy of the filings may be obtained from....
In order for testimony and evidence to be received concerning the proposed rate adjustments filed by the aforementioned local exchange companies, a public hearing will be held....
The only rates specifically mentioned are the reduced toll switched access rates referenced in the first paragraph which are not the rates being considered for adjustment. Taken as a whole, this notice is not informative and in fact is somewhat *170 misleading since one could conclude the "proposed rate adjustments" merely refers to the reduction in toll switched access rates. We find the notice given was inadequate to satisfy the requirements of § 58-9-530.

3. Prejudice
We conclude the rate increases were ordered without adequate notice in violation of due process.[2] Further, we find substantial prejudice from the lack of notice. See Tall Tower, Inc. v. South Carolina Procurement Review Panel, 294 S.C. 225, 363 S.E.2d 683 (1987) (due process claim requires a showing of substantial prejudice). The PSC had the discretion under § 58-9-280(L) to offset lost access rate revenue incurred by the participating local exchange carriers by increasing other rates and from the Fund. The PSC determined the burden to be imposed on consumers, as opposed to the contributing members of the Fund, with no public input. Although there is no way to determine actual prejudice in the amount of the rate increases ordered, the public was completely deprived of an opportunity to be heard.

CONCLUSION
The remedy requested by the Consumer Advocate is to reverse the order of the circuit court and remand the matter to the PSC with instructions to order refunds with interest to consumers who have been paying increased rates since 1997. The rate increases ordered in this case are scheduled in increments from 1997 through 2001. Rather than order refunds, we find a less drastic remedy is to require the PSC to hold hearings for each local exchange carrier after adequate notice to the affected customers, re-evaluate the total five-year rate increases, and adjust the future scheduled annual rate increases if necessary.
REVERSED AND REMANDED.
FINNEY, C.J., TOAL, WALLER, and BURNETT, JJ., concur.
NOTES
[1] Subsection (L) provides:

To offset the adverse effect on the revenues of the incumbent [local exchange carrier], the commission shall allow adjustment of other rates not to exceed statewide average rates, weighted by the number of access lines, and shall allow distributions from [the Fund], as may be necessary to recover those revenues lost through the concurrent reduction of the intrastate switched access rates.
[2] Article I, § 22, of our State constitution provides:

No person shall be finally bound by a judicial or quasi judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard....