HILL, J.:
**442 John M. McIntyre and Silver Oak Land Management, LLC (collectively Appellants) appeal the order of the circuit court affirming a $540,000 civil penalty imposed upon them by the Securities Commissioner of South Carolina. Because the Commissioner's administrative enforcement action deprived Appellants procedural due process, we reverse and vacate.
I.
The Attorney General of South Carolina, acting as the Commissioner pursuant to S.C. Code Ann. § 35-1-601 (Supp. 2017), began this administrative enforcement action by serving Appellants with a Cease and Desist order on April 19, 2013, alleging thirty-nine acts of securities fraud related to Appellants' offer, sale, and management of interests in numerous limited liability companies (LLCs). Besides ordering Appellants to cease and desist from violating the S.C. Uniform Securities Act (the Act), the order reserved the right to levy a $10,000 civil penalty for each violation of the Act, as well as the cost of "the investigation and proceedings," unless Appellants chose to let the order become effective "by operation of law," as provided by S.C. Code Ann. § 35-1-604(b) (Supp. 2017), in which case they would have to pay a $50,000 civil penalty.
Appellants chose not to let the order stand and instead requested a hearing. The Commissioner appointed an assistant attorney general as the Hearing Officer. After four days of hearings, the Hearing Officer issued a Report and Recommendation, **443 concluding the LLC investments were not securities and the Cease and Desist order should be dismissed.
The Commissioner disagreed, finding the LLC investments were securities covered by the Act and ordering the Hearing Officer to issue another Report and Recommendation as to whether Appellants had violated the Act.
The Hearing Officer's second Report and Recommendation found Appellants had committed seventy-eight violations of the Act. After reviewing this Report and Recommendation, the Commissioner concurred in its findings but "reiterated" his own findings from the previous order and made new factual findings. The Commissioner reduced the number of violations to fifty-four and imposed *195 the maximum civil penalty of $10,000 for each violation, for a total penalty of $540,000. This order also required Appellants to pay the costs of the investigation and proceedings, and there was no provision allowing Appellants to contest the amount of the costs or be heard in response.
Appellants petitioned the circuit court for review of the Commissioner's decision, contending the administrative proceeding violated their due process rights, the LLC investments were not securities, and substantial evidence did not support the Commissioner's findings. The circuit court affirmed the Commissioner's decision.
II.
Appellants claim the Commissioner denied them procedural due process by not promulgating rules for the hearing procedure. As a result, Appellants had no notice of the availability, order, or scope of opening and closing arguments; the order or burden of proof; the standard for admissibility of evidence; the existence of subpoena rights; or any other fundamental aspects of the hearing. Appellants point to S.C. Code Ann. § 35-1-605(a)(1) (Supp. 2017), which states, "The Securities Commissioner may issue forms and orders and, after notice and comment, may adopt and amend rules necessary or appropriate to carry out [the Act]...." Judicial review of the Commissioner's factual findings by the circuit court is discussed in § 35-1-609, but is silent as to our scope of review. Appellants' claims require us to interpret the legislative intent of the Act, **444 and also decide whether the Commissioner's actions violated due process. We may decide these questions of law without deference to the rulings of the Commissioner or the circuit court. See Jeter v. S.C. Dep't of Transp. , 369 S.C. 433, 438, 633 S.E.2d 143, 146 (2006) (holding interpretation of statute is a question of law); Charleston Cty. Parks & Recreation Comm'n v. Somers , 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995) (holding determination of legislative intent is a matter of law).
Our supreme court has twice confronted an administrative agency's failure to enact procedural rules for hearings. In the first case, Tall Tower, Inc. v. S.C. Procurement Review Panel , 294 S.C. 225, 363 S.E.2d 683 (1987), the issue was whether the South Carolina Procurement Review Panel's failure to adopt hearing rules and procedures violated a bid protestor's rights of due process as guaranteed by Article I, section 3 of the South Carolina Constitution. Tall Tower , 294 S.C. at 232, 363 S.E.2d at 686. The bid protestor asserted that because S.C. Code Ann. § 11-35-4410(5) (1986) stated "the [p]anel shall establish its own rules and procedures for the conduct of its business, including the holding of necessary hearings," the Panel's failure to do so violated its due process rights. Id . Our supreme court disagreed, noting the bid protestor could show no substantial prejudice from the Panel's actual conduct of the hearing. Id . at 294 S.C. at 232-33, 363 S.E.2d at 686-87.
The issue arose a second time in Unisys Corp. v. S.C. Budget & Control Bd. , 346 S.C. 158, 551 S.E.2d 263 (2001), but in a markedly different context. It was another bid dispute amidst the Procurement Code, but this time the disappointed bidder claimed its right to due process guaranteed by Article I, section 22 was violated because the Legislature-not the agency-had failed to establish procedures for hearings before the Chief Procurement Officer (CPO). Unisys Corp. , 346 S.C. at 173-74, 551 S.E.2d at 272. The supreme court again disagreed, holding due process was satisfied because appeal of the CPO's decisions was heard de novo by the Procurement Review Panel. Id . at 174-75, 551 S.E.2d at 272. The supreme court reasoned because the procedure set forth by the Review Panel established adequate due process, there could be no substantial prejudice. Id . at 175, 551 S.E.2d at 272.
**445 As mentioned, Unisys found the lack of procedural safeguards at an administrative hearing was cured by the availability of de novo review by the Procurement Review Panel. Id . at 175, 551 S.E.2d at 272. Two features of the Act prevent this cure from working here. First, rather than de novo review, judicial review of the Commissioner's ruling is made using the substantial evidence standard, and-importantly-the factual findings of the Commissioner are "conclusive" if supported by competent, material, *196 and substantial evidence. S.C. Code Ann. § 35-1-609 (Supp. 2017).
Second, as the Act was administered here by the Commissioner, the Hearing Officer's ruling was merely advisory and intermediate. It is unclear what statutory authority empowers the Commissioner to conduct a review of the Hearing Officer's ruling, but it is clear Appellants had no opportunity to present evidence at this stage or otherwise be heard. This diluted whatever fairness and impartiality the procedure before the Hearing Officer may have had. Unlike Unisys , where the internal appeal to the Panel expanded the bidder's due process and cured its earlier curtailment, the Commissioner's review diminished Appellants' right to be heard. By silently reserving the right to not only reject the Hearing Officer's factual findings and rulings but to make its own findings without notice, hearing, or any further opportunity for input, the Commissioner undermined its own ad hoc procedure. A party is not entitled to a hearing at each stage of agency review, but a meaningful hearing must occur at some stage. See Ross v. Med. Univ. of S.C. , 328 S.C. 51, 68-69, 492 S.E.2d 62, 71-72 (1997).
Section 35-1-605(a)(1) directs that the Commissioner provide rules for hearings "to carry out" its authority under the Act. But there is more: the rules must be made after "notice and comment," a requirement critically absent from the statutory language in play in Tall Tower and Unisys . Id . Aware that it had exempted the Securities Act from the Administrative Procedures Act (APA), see S.C. Code Ann. §§ 35-1-601, 609 (Supp. 2017), and, consequently, the APA's requirement that notice and comment occur before an agency's rules can become law, the Legislature required that notice and comment precede the Commissioner's rulemaking to remove any temptation **446 of the Executive Branch to amass underground regulations. See § 35-1-605(a)(1).
Rather than complying with the Legislative directive, the Commissioner chose not to promulgate any rules regulating the conduct of or procedure appropriate for administrative hearings. This leaves the Commissioner with the awkward argument that because § 35-1-605(a)(1) uses the word "may," it is not required to adopt any rules of procedure at all.
We find this position curious, and one that cannot survive scrutiny. That scrutiny occurs within the framework of the due process guarantees of South Carolina Constitution Article I, § 3 and § 22. We will take up § 22 first, as it applies specifically to agency actions.
A. S.C. Constitution Article I, Section 22
In 1966, the Legislature appointed a commission chaired by then Senator (later Governor) John C. West to study and propose amendments to the South Carolina Constitution. Among its recommendations, the West Committee recognized the creeping rise of the administrative state, noting agency decisions often "are more significant than laws enacted by the General Assembly or decisions made by the courts." Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895 , at 21 (1969). The West Committee registered its agreement "with many other constitutional study groups throughout the country that judicial and quasi-judicial decisions of administrative agencies should be consistent with due process of law and complete fairness to the citizen." Id . The language it drafted "as a safeguard for the protection of liberty and property of citizens," id . at 20, was adopted and ratified in 1970 as our current Article I, section 22 :
No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both prosecution and adjudication; nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review.
**447 This section is "an additional guarantee of important due process rights." Garris v. Governing Bd. of S.C. Reinsurance Facility , 333 S.C. 432, 444, 511 S.E.2d 48, 54 (1998).
*197 The West Committee was prophetic. Today, citizens increasingly encounter "the leviathan known as administrative agency rule-making-the so-called Fourth Branch of government." Joseph v. S.C. Dep't of Labor, Licensing & Regulation , 417 S.C. 436, 455-56, 790 S.E.2d 763, 773 (2016) (Kittredge, J., concurring).
The mode of procedure the Legislature prescribed in § 35-1-605(a)(1) mandated that notice and comment precede the Commissioner's adoption of rules. The Legislature's use of the word "may" in this context did not render the Commissioner's obligation optional. The plain meaning of § 35-1-605(a)(1) is that the Commissioner did not have to implement the Act at all, but if he chose to "carry out" the grant of power delegated to him by the Legislature, he would have to do so by the promulgation of rules that had been exposed to the light of public notice and comment. Otherwise, the government would be depriving a person of his property by a "mode of procedure" not authorized or "prescribed" by the Legislature. Worse, here the Commissioner deprived Appellants of significant property without any prescribed mode of procedure, an affront to the most basic conceptions of the rule of law. See 1 WILLIAM BLACKSTONE, COMMENTARIES *46 ("All laws should be therefore made to commence in futuro , and be notified before their commencement; which is implied in the term 'prescribed.' ").
The Commissioner stresses that "may" is permissive rather than mandatory, an argument foreclosed both by the context in which "may" appears and the very next command of our constitution, Article I, § 23.
We must construe statutory words in context. "May" often denotes the permissive, but not always. Robertson v. South Carolina , 276 S.C. 356, 358, 278 S.E.2d 770, 771 (1981) (holding that in deciding "whether 'may' is to be interpreted as mandatory or permissive in a particular statute, legislative intent is controlling"); see also United Hosp. Center, Inc. v. Richardson , 757 F.2d 1445, 1453 (4th Cir. 1985) ("While the term 'may' in a statute or agency regulation dealing with **448 agency power is generally construed as permissive rather than mandatory," the construction depends on whether context reveals the legislature intended "to confer a discretionary power or to impose an imperative duty.") (citations omitted). For example, we doubt the Commissioner would argue "may" is permissive when it appears in § 35-1-603(c) (Supp. 2017), which states: "[t]he Securities Commissioner may not be required to post a bond in an action or proceeding under this chapter."
The Commissioner's argument that "may" as used in § 35-1-605(a)(1) is permissive is also answered by Article I, § 23 which provides: "The provisions of the Constitution shall be taken, deemed, and construed to be mandatory and prohibitory, and not merely directory, except where expressly made directory or permissory by its own terms." S.C. Const. art. I, § 23. Taking § 22 and § 23 of Article I together, we hold that while § 35-1-605(a)(1) gave the Commissioner the discretion to implement or not implement an administrative enforcement scheme for violations of the Act, that discretion does not extend to conducting administrative hearings without first adopting procedural rules for the hearings after notice and comment. Accordingly, viewing the word "may" in context, we hold the legislature intended the Commissioner to promulgate rules (i.e., a "mode of procedure"), after notice and comment, before holding administrative hearings. See Stono River Envtl. Prot. Ass'n v. S.C. Dep't of Health & Envtl. Control , 305 S.C. 90, 94, 406 S.E.2d 340, 342 (1991) (holding an agency violated procedural due process guaranteed by Article I, § 22 when it "summarily abandoned the [hearing] procedure," did not inform parties of the alternative procedure it planned to use, and did not inform parties of issues to be considered at the proceeding).
As to procedural due process principles concerning notice and hearing, our supreme court has held the contours of Article I, § 22 trace those of our general state due process clause, Article I, § 3, and federal due process. See S.C. Ambulatory Surgery Ctr. Ass'n v. S.C. Workers' Comp. Comm'n , 389 S.C. 380, 391, 699 S.E.2d 146, 152 (2010). It is to those principles we now turn.
*198 **449 B. General Procedural Due Process
As our supreme court has held, "[t]he fundamental requirements of due process include notice, an opportunity to be heard in a meaningful way, and judicial review." Kurschner v. City of Camden Planning Comm'n , 376 S.C. 165, 171, 656 S.E.2d 346, 350 (2008). The level of process due is "flexible" dependent upon the demands of the situation. Id . at. 172, 656 S.E.2d at 350. We do not interpret this to mean, as the Commissioner does, that this flexibility is so pliable that a government agency can refuse to announce the rules of procedure it intends to use at a substantive hearing where a citizen's property may be confiscated and his liberty imperiled. Although there are no technical requirements for procedural due process, certain elements must be present, including: "(1) adequate notice; (2) adequate opportunity for a hearing; (3) the right to introduce evidence; (4) the right to confront and cross-examine witnesses." In re Vora , 354 S.C. 590, 595, 582 S.E.2d 413, 416 (2003).
Procedural due process insists upon fair play. See Hipp v. S.C. Dep't of Motor Vehicles , 381 S.C. 323, 325, 673 S.E.2d 416, 417 (2009) ("Due process is violated when a party is denied fundamental fairness."). The flexibility the cases refer to are a recognition of the many ways-large and small-a government can deprive a person of his property interests. The extent of the procedural protections due process requires corresponds to the extent of the potential deprivation. Accordingly, "due process may require a trial-type hearing in fact-specific, adjudicatory decisions of an administrative body," but discretionary decisions involving potentially minor or limited incursions of property rights call for only limited procedural safeguards. Kurschner , 376 S.C. at 172, 656 S.E.2d at 350. In determining the process due, we must consider: (1) the private interest affected by the proceeding; (2) the risk of erroneous deprivation of that interest as a result of the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the State's interest, including the burden of additional or substitute procedural requirements. See Mathews v. Eldridge , 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).
**450 Appellants' private interests were gravely affected by the proceedings. The Commissioner imposed a civil penalty of $540,000, an eye-popping amount that would bankrupt all but the wealthiest of citizens. Appellants' risk was not just monetary-each willful violation of the Act is a crime punishable by up to ten years in prison and a $50,000 fine. S.C. Code Ann. § 35-1-508(a). Nor was the risk of criminal exposure fanciful: by the time of the administrative hearing, Appellants' conduct had been referred to the criminal division of the South Carolina Attorney General's Office. The Attorney General later indicted Appellant McIntyre for one count of violating § 35-1-508(a) and three counts of Breach of Trust with Fraudulent Intent related to his management of the LLCs. In 2016, McIntyre pled guilty to two counts of Breach of Trust with Fraudulent Intent, was sentenced to concurrent terms of ten years imprisonment suspended upon five years of probation, and ordered to pay restitution and perform community service.
While Appellants had the opportunity to cross-examine adverse witnesses and present favorable ones, without notice of set procedural rules the exercise before the Hearing Officer was riddled with procedural irregularities and plagued by a lack of order creating an intolerable risk of erroneous deprivation. No one knew what the applicable burden of proof was until after the hearing, when the Hearing Officer issued his first recommendation. See Santosky v. Kramer , 455 U.S. 745, 757, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) ("Since the litigants and the factfinder must know at the outset of a given proceeding how the risk of error will be allocated, the standard of proof necessarily must be calibrated in advance."). Without knowledge of the burden of proof at the outset, Appellants were left to guess what or how much evidence to present, if any. It is hard to imagine how the opportunity to be heard can be meaningful if one does not know what to say.
An administrative agency need not adhere to strict rules of evidence when acting in a judicial capacity, but "the substantial *199 rights of the party must be preserved." City of Spartanburg v. Parris , 251 S.C. 187, 190, 161 S.E.2d 228, 229 (1968). Appellants objected to much of the Commission's evidence, on grounds including relevance, hearsay, and authentication. The parties and the Hearing Officer spent considerable **451 time debating whether the rules of civil procedure, or evidence, or any rules at all applied. There was also substantial befuddlement over whether the parties-or the Hearing Officer for that matter-had subpoena power. Although Appellants successfully subpoenaed witnesses, no party to a proceeding carrying such high stakes should be forced to prepare their case amidst the suspense that they may not have the ability to compel the attendance of witnesses. Without rules, especially as to evidence, there were no assurances as to the reliability of the evidence considered by the Hearing Officer, aggravating the risk Appellants would be wrongfully deprived of their property. See Mathews , 424 U.S. at 334-35, 96 S.Ct. 893. This risk was made more acute by the lack of de novo judicial review and the conclusiveness the standard of review assigns the Commissioner's factual findings.
As a result of this haphazard process, the risk Appellants would be erroneously deprived of their property was substantial. Id. at 335, 96 S.Ct. 893. The value of adopting actual procedural rules was high. Id . The burden on the Commissioner of adopting formal procedural rules is insignificant, for if it is unreasonable to burden the Executive Branch with conducting public notice and comment mandated by the Legislature then we are in more trouble than we know. After all, "[t]he history of liberty has largely been the history of observance of procedural safeguards." McNabb v. United States , 318 U.S. 332, 347, 63 S.Ct. 608, 87 L.Ed. 819 (1943).
C. Substantial Prejudice/Harmless Error
The Commissioner maintains any due process violation was harmless because Appellants presented a full defense during four days of hearings. See Tall Tower , 294 S.C. at 233, 363 S.E.2d at 687 ("A demonstration of substantial prejudice is required to establish a due process claim.").
A "harmless error" analysis, however, is impossible and unnecessary to undertake where the structure of the proceeding under review was fundamentally unsound. See LaSalle Bank Nat'l Ass'n v. Davidson , 386 S.C. 276, 280, 688 S.E.2d 121, 123 (2009). In LaSalle Bank , the court held conducting a foreclosure hearing without a judge present amounted to a structural defect that violated procedural due **452 process so critically it could not be harmless. Id. ; see also Garris , 333 S.C. at 447-48, 511 S.E.2d at 56 (finding the conduct and structure of an agency hearing "was so inherently flawed that it is not subject to harmless error analysis").
While here the Hearing Officer was present, neither he nor the parties were provided with notice of or access to any procedural rules governing the proceeding. The lack of any formal procedural architecture fated the process as arbitrary and so affected fundamental fairness that to deem it harmless would only add insult to the injury to the rule of law. See Groning v. The Union Ins. Co ., 10 S.C. L. 537, 537-38 (S.C. Const. App. 1819) ("The only security which the citizens of any country can have for their property, or even for their lives, is derived from the promulgation and certainty of the laws. One of the most distinguishing features in the administration of the Emperor Caligula , whose name is proverbial for his tyranny, was, that he caused his edicts to be suspended so high that they could not be read by his subjects."); 1 WILLIAM BLACKSTONE, COMMENTARIES *137-38 ("[J]ustice is directed to be done according to the law of the land: and what that law is, every subject knows, or may know, if he pleases; for it depends not upon the arbitrary will of any judge; but is permanent, fixed, and unchangeable, unless by authority of parliament.... Not only the substantial part, or judicial decisions, of the law, but also the formal part, or method of proceeding cannot be altered but by parliament: for, if once those outworks were demolished, there would be no inlet to all manner of innovation in the body of the law itself."). If unchecked administrative rule-making is a leviathan, we are not sure what to call an agency's decision to adjudicate vast private property rights without posting any prescribed rules despite legislative *200 direction, but we cannot call such a creature harmless.
Because Appellants were denied procedural due process, we reverse the order of the circuit court and vacate the civil penalty. In light of this disposition, we need not address Appellants' remaining issues. Futch v. McAllister Towing of Georgetown, Inc ., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999).
REVERSED AND VACATED.
SHORT and THOMAS, JJ., concur.