15913

SOUTHERN RY. CO. v. ORDER OF RY. CONDUCTORS OF AMERICA

(41 S. E. (2d) 774)

*Messrs. Barnwell & Whaley,* of Charleston, *Mr. Frank G. Tompkins,* of Columbia, and *Messrs. Sidney S. Alderman* and *W. S. Macgill,* of Washington, D. C., for Appellant, cite:

*Messrs. Mitchell & Horlbeck,* of Charleston, and *Messrs. Elliott, Shuttleworth & Ingersoll,* and *V. C. Shuttleworth,* of Cedar Rapids, Iowa, for Respondent, cite:

*Messrs. Barnwell & Whaley,* of Charleston, *Mr. Frank G. Tompkins,* of Columbia, and *Messrs. Sidney S. Alderman,* and *W. S. Macgill,* of Washington, D. C., for Appellant, in Reply, cite:

February 13, 1947.

FISHBURNE, AJ.: This action was instituted against the defendant by Southern Railway Company in July, 1945, under the declaratory judgment Act of this state, Code Section 660, for the purpose of obtaining a construction of a written contract between the plaintiff and

the defendant, Order of Railway Conductors of America. The question presented by the complaint is whether certain industrial switching movements at the plant of the Ancor Corporation at Pregnall, South Carolina, an intermediate point on plaintiff's railroad line between Charleston and Branchville, are part of the service trips of conductors in charge of local freight trains between Charleston and Branchville; or whether such conductors are entitled to an additional day's pay for performing switching operations at the plant of the Ancor Corporation, separate and apart from and in addition to the pay for their service trips from Charleston to Branchville and return.

Plaintiff appeals from the judgment of dismissal entered upon sustaining the defendant's oral demurrer to the complaint.

As will be seen, the action is one involving a dispute or controversy between the plaintiff, an interstate carrier by rail, and the defendant, the duly authorized representative of the craft and class of conductors employed on plaintiff's railroad, concerning the interpretation of a collective bargaining agreement between plaintiff and defendant in regard to rates of pay, rules, and working conditions.

The complaint alleges that the defendant is an unincorporated association engaged in union activities in Charleston County and is the duly authorized representative of and bargaining agent for the conductors employed by the plaintiff in the operation of the freight trains mentioned in the complaint in all matters involved in and arising under a written contract, attached as an exhibit, entitled "Schedule of Wages and Rules and Regulations for Conductors". That an actual controversy exists between plaintiff and defendant as to the proper construction of this contract regarding the work of conductors represented by defendant on certain local freight trains (known as "local freight service") operated between Charleston, South Carolina, and Branchville, South Carolina, with reference to industry switching service performed at Pregnall, a point on this line of railroad; that the distance

between Charleston and Branchville is approximately sixty-three miles, the average time consumed on the run is six and one-half hours, and the average time of duty of conductors each day is approximately eight hours and thirty-nine minutes, the conductors going on duty at Charleston or at Branchville, as the case may be, and being relieved from duty at the end of each run.

That as a part of the regular service trip of the conductors in charge of the freight trains on the run, they perform such switching as is necessary over the industrial tracks of the various industries served by plaintiff along this line of railroad, and have been doing so continuously at least since 1910, without demanding or being paid extra compensation; that conductors in charge of west bound local freight trains are instructed to perform such industry switching as may be necessary at the plant of the Ancor Corporation over industry tracks owned by this corporation, such industry switching consisting of the west bound local freight trains taking cars whose destination is the plant of the Ancor Corporation, to the plant, placing the cars on a designated track or tracks, and then picking up and hauling from the plant to plaintiff's main line any cars destined to other points. It is alleged that such switching movements are similar to those performed on innumerable other industry tracks which join plaintiff's railroad line and have always been an accepted and agreed practice by the conductors of plaintiff's local freight trains as a part of their service trips and have been performed as pursuant to the terms of the said contract.

The complaint further alleges that the above mentioned contract, in Articles 5(a) and 7, establishes the compensation to be paid the conductors and that the base rate of pay for these conductors in effect at the time of the commencement of the suit (the distance of the run being less than one hundred miles), was $9.10 per day for eight hours service or less, and that if service exceeded eight hours they would receive additional pay for overtime on a minute basis at the rate of $1.70 an hour.

The complaint further alleged that although the conductors of plaintiff have always performed the service of switching on industrial tracks as an incident to and part of the road trip, and that notwithstanding they have always been paid on the basis of a minimum day and overtime, if earned, in accordance with the provisions of the contract, the defendant as their duly authorized representative and bargaining agent is now claiming in their behalf, and has demanded for the industry switching service at Pregnall, payment of additional compensation at the rate of a minimum day's pay, or $9.10 per day, separate and apart from and in addition to their regular pay of $9.10 for the local freight service.

That starting on or about October 10, 1944, the defendant has filed claims with the plaintiff for the additional day's pay for these conductors, claiming that the performance of the industry switching at the plant of the Ancor Corporation entitled them to an additional day's pay, separate and apart from, and in addition to their pay for the local freight service trip between Charleston and Branchville, which claims the plaintiff alleges are not only in violation of the sections of the contract referred to above, but are contrary to the provisions of the contract which provide that it does not alter former accepted and agreed to practices, working conditions and interpretations.

The complaint then sets out the heavy additional expenses which would be involved in the payment of defendant's claims; the formal rejection of the claims, so that an actual controversy between plaintiff and defendant exists; and alleges that it is without adequate remedy at law or in equity other than the present suit for a declaratory judgment, this being the only judicial remedy available to plaintiff in order to avoid irreparable injury and damage.

The prayer of the complaint is for a declaratory judgment or decree adjudging that under the provisions of the contract between the parties, the industrial switching movements at the plant of the Ancor Corporation at Pregnall are

a part of the local freight service trips of the conductors for which they are entitled to receive only the applicable and governing rate of compensation as set out in the complaint, and that they are not entitled to receive an additional day's pay separate and apart from the pay for the service trip from Charleston to Branchville.

The respondent contends under the first ground stated in the demurrer, that the issue involves a labor dispute concerning the interpretation of a collective bargaining agreement which is wholly within the terms of the Railway Labor Act; that this Act is the sole and exclusive means of procedure for settling such disputes, and that consequently the dispute has been removed from the judicial control or determination of the courts of this state. (48 U. S. Stat. 1185, Chap. 691, 45 U. S. C. A., Secs. 151-188, Pages 986-1056.)

In sustaining the demurrer, the circuit court held that appellant has an adequate remedy under the Railway Labor Act, and that there being another remedy a court of equity has no jurisdiction. And, further, that even if the court has concurrent jurisdiction, it should in the exercise of its discretion, refuse to assume jurisdiction. In opposing this holding of the court, appellant assigns error because the Federal Railway Labor Act is not exclusive and does not, in fact, provide a remedy which defeats the jurisdiction of the courts of South Carolina in a case of this kind.

This Act established a Board to be known as the National Railroad Adjustment Board, and provides that one of the divisions of this Board should have jurisdiction over wage disputes. In support of its contention, the respondent points especially to Section 153 (i), which as amended in 1934, provides that disputes growing out of grievances or out of the interpretation or application of agreements, "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by

either party, to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes".

The respondent argues that under this provision the National Railroad Adjustment Board is vested with exclusive jurisdiction over disputes between conductors and the carrier concerning rates of pay and rules of working conditions; or at least that the dispute must first be referred to the Board and the remedies there exhausted before resort may be had to the courts.

This contention in our opinion is untenable. The present action is for a declaration of rights under a written contract, and does not involve or arise out of any order of the National Railroad Adjustment Board. In fact, there is nothing in the complaint to suggest that the dispute has ever been referred or mediation invited under the provisions of the Railway Labor Act; and the above quoted provisions do not purport in such case to prevent recourse to the courts in the first instance.

In the recent decision of *Illinois Central R. Co. v. Moore,* 5 Cir., 112 F. (2d) 959, it was said:

"The plea that suit may not be filed without recourse to the Adjustment Board is without merit. The Adjustment Board may settle the disputes of the individual employee as well as those of the group. 45 U. S. C. A., Sec. 153 (i), as may the Mediation Board, 45 U. S. C. A., Sec. 155(i). The first cited section says that a dispute 'shall be handled in the usual manner up to and including the chief operating officer of the carrier', and then 'it may be referred' to the Adjustment Board. The permission to go to the Adjustment Board does not exclude direct recourse to the courts. See *Bell v. Western Railway of Alabama,* 228 Ala. 328, 153 So. 434. Decisions to the effect that a failure to invoke administrative remedies before the Interstate Commerce Commissions or other federal administrative Boards precluded or rendered premature a resort to the courts were based upon stat-

utes which by express terms or necessary implication gave to the administrative board exclusive jurisdiction or made the exhaustion of administrative remedies a condition precedent to judicial action. See *United States v. Illinois Central R. Co.*, 291 U. S. 457, 54 S. Ct. 471, 78 L. Ed. 909; *Myers v. Bethlehem Shipbuilding Corporation*, 303 U. S. 41, 58 S. Ct. 459, 82 L. Ed. 638; 51 Harvard Law Review, 1254, 1260, where many of the cases on the subject are discussed".

That the Railway Labor Act did not oust the courts of jurisdiction to interpret an agreement between a carrier and its employees, even where the dispute with respect to the agreement was one which, under the Act, might have been, but was not, submitted to the National Railroad Adjustment Board, was clearly determined in *Moore v. Illinois Central R. Co.*, 312 U. S. 630, 61 S. Ct. 754, where it is stated:

"* * * But we find nothing in the Act which purports to take away from the courts the jurisdiction to determine a controversy over a wrongful discharge or to make an administrative finding a prerequisite to filing a suit in court. * * * It is to be noted that the section pointed out, Sec. 153 (i), as amended in 1934, provides no more than that disputes 'may be referred * * * to the * * * Adjustment Board. * * *' It is significant that the comparable section of the 1926 Railway Labor Act (44 Stat. at L. 577, 578, Chap. 347) had, before the 1934 amendment, provided that upon failure of the parties to reach an adjustment a 'dispute shall be referred to the designated Adjustment Board by the parties, or by either party.' * * * This difference in language, substituting 'may' for 'shall', was not, we think, an indication of a change in policy, but was instead a clarification of the law's original purpose. For neither the original 1926 Act, nor the Act as amended in 1934, indicates that the machinery provided for settling disputes was based on a philosophy of legal compulsion. On the contrary, the legislative history of the Railway Labor Act

shows a consistent purpose on the part of Congress to establish and maintain a system for peaceful adjustment and mediation voluntary in its nature. The District Court and the Circuit Court of Appeals properly decided that petitioner was not required by the Railway Labor Act to seek adjustment of his controversy with the railroad as a prerequisite to suit for wrongful discharge. * * *"

The holding in *Moore v. Illinois Central R. Co.,* 312 U. S. 630, 61 S. Ct. 754, was followed in *Washington Terminal Company v. Boswell,* 124 F. (2d) 235, which was affirmed per curiam by an equally divided court, 319 U. S. 732, 63 S. Ct. 1430, where it was stated:

"The foregoing considerations are reinforced by the fact that the carrier, under the decision in *Moore v. Illinois Central R. R., supra,* can bring its suit on the contract, independently of the statute, prior to the time when the dispute is submitted to the Board. Until then, at least, it has its election to pursue the exclusively judicial remedy or to follow the administrative and judicial one provided by the Railway Labor Act. * * *"

In view of these decisions, it is our opinion that the Congress intended that controversies of the character set forth in this case may be adjusted in either of two ways: First, under the authority of the Act by submitting the dispute to the National Railroad Adjustment Board; or, second, by exercising the common law rights of any party to bring an action to construe a contract and have his rights declared. There is concurrent jurisdiction of the subject-matter of a suit of this kind, either by a court of competent jurisdiction or by the National Railroad Adjustment Board.

The briefs filed by the appellant and the respondent are thorough and extensive, and exhaustively discuss this issue, with the citation of many cases. On this question of jurisdiction, the repondent discusses at length the necessity and advisability of recourse by appellant to the Railway Act and the effect of the failure to proceed under it on the adminis-

tration of the Act, and strong reliance is had in support of this argument on the recent case of *Order of Railway Conductors of America v. Pitney* (January 14, 1946) ...., U. S. ...., 66 S. Ct. 322. Respondent contends that it was definitely decided in the *Pitney case* that in the exercise of equitable discretion a court should refuse to interfere in disputes properly cognizable by the Adjustment Board. It is urged that the decision in the *Pitney case* overruled in effect the case of *Moore v. Illinois Central R. Co.,* 312 U. S. 630. But we are not convinced that it has this effect.

The *Pitney case* involved primarily a suit for an injunction, and was complicated by the dual function of the court —first, as a court required to direct the receivers how to conduct the business of the railroad; and, second, as a court of equity required to determine if an injunction should issue to enjoin the receivers from violating Section 6 of the Railway Labor Act. The case was further complicated by a jurisdictional dispute requiring the interpretation of two collective bargaining agreements, which it was alleged, overlapped.

None of these conflicting features is present in the case now under consideration. In this case there is only one defendant, one contract, and one set of facts requiring the attention of the court in construing the agreement and disposing of the dispute. It might further be noted that the Supreme Court in the *Pitney case* did not hold that the Federal Court did not have jurisdiction. It merely held that in consideration of the complicated features of the case, the court should retain jurisdiction to stay action on the prayer for injunction in order to permit the parties to first have the two contracts interpreted by the administrative procedure provided in the Railway Labor Act. Nowhere in the opinion of the court do we find any reference made to the case of *Moore v. Illinois Central R. Co., supra.* If it had been the intention of the court to overrule the *Moore case* which was decided in 1941, we think this would have been done in specific language.

Our declaratory judgment Act (Code Section 660) reads as follows:

"No action or proceeding in any court of record wherein the construction of a deed, a will or written contract is sought or involved shall be open to the objection that a merely declaratory judgment, decree or order is sought, and the court may make binding declarations of the rights of parties to such action or proceedings under such instruments whether other relief is or could be claimed or not."

As a sanction for the maintenance of this action and for the relief demanded, the appellant comes squarely within the provisions of this section of the Code.

It is generally held that the jurisdiction to render a declaratory judgment is discretionary, and should be exercised with great care, and with due regard to all the circumstances of the case. Annotations, 12 A. L. R. 66, 87 A. L. R. 1212. And it is clear under our Code provision (Section 660) that the legislature intended to confer discretionary powers upon the courts of this state by using the expression "may make binding declarations".

The courts are not entirely agreed as to the effect of the existence of another remedy upon the right to a declaratory judgment. Declaratory Judgment Acts are not in general limited by their express terms to cases where there is no other adequate remedy available, but, on the contrary, are expressly made applicable, like ours, without regard to other relief claimed. When there exists a genuine controversy, as the pleadings in this case admit, requiring a judicial determination, the court is not bound to refuse to exercise its power to declare rights and other legal relations merely because there is another remedy available. 16 Am. Jur. Sec. 13, Page 286; *Woolard v. Schaffer Stores Co.*, 272 N. Y. 304, 273 N. Y. 527, 5 N. E. (2d) 829, 7 N. E. (2d) 676, 109 A. L. R. 1262.

A complaint for declaratory relief is legally sufficient if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties

of the respective parties under a contract, and requests that these rights and duties be adjudged by the court. The allegations of the complaint leave no doubt of the existence of an actual controversy between the parties.

That another remedy may exist, and that other relief may be available to the plaintiff are factors to be considered by the court. However, before declaratory relief may be denied, in the discretion of the court, on the ground of the existence of other remedies, it must clearly appear that the asserted cumulative remedies are not only available to the plaintiff, but that they are speedy and adequate, or as well suited to the plaintiff's needs as declaratory relief.

The complaint fully sets out the facts upon which the case is based. In passing upon the demurrer, the allegations of the complaint and all intendments must be taken to be true, and these allegations fix bounds beyond which we cannot go.

It appears that all of the necessary parties are before the court; the situation giving rise to the controversy is local to South Carolina, and the witnesses are all available in this state. Under the facts and circumstances disclosed here we see no sound reason why jurisdiction, having been acquired by our courts, should not be retained. Certainly under the facts of this case, no other remedy exists under the laws of.this state except that which is now claimed by the plaintiff. The case analogous to this is that of *Delaware, Lackawanna and Western R. Co. v. Slocum,* 50 N. Y. S. (2d), 313, 183 Misc., 454. In this case, after a hearing upon the merits, the court will exercise its discretion as to whether or not it will make a binding declaration.

We are merely holding here that the complaint alleged a cause of action for declaratory relief; and for the reasons stated the circuit court of Charleston County has jurisdiction to entertain the action, and the lower court erred in sustaining the demurrer.

Judgment reversed.

BAKER, CJ., and STUKES, TAYLOR and OXNER, JJ., concur.