## 20311

C. W. MATTHEWS CONTRACTING CO., INC., Appellant, v. SOUTH CAROLINA TAX COMMISSION, Respondent.

(230 S. E. (2d) 223)

*Harvey G. Sanders, Jr., Esq.,* of *Leatherwood, Walker, Todd & Mann,* Greenville, *for Appellant,* 

*Messrs. Daniel R. McLeod, Atty. Gen.,* and *John C. von-Lehe, Asst. Atty. Gen.,* of Columbia, *for Respondent,* 

November 16, 1976.

GREGORY, Justice:

This appeal comes from an order dismissing the action brought by Matthews Corporation (hereinafter Matthews) for the recovery of taxes under § 65-2662 of the S. C. Code (Cum. Supp. 1975).

The controversy began when appellant, a Georgia corporation specializing in road building, took deductions in 1969 and 1970 for losses sustained in 1965, 1966 and 1967. Appellant relied on § 65-259(12) of the Code (1962), which allows "taxpayers who have established a new business or industry in this State" to carry forward losses suffered during their first three years of operation for a period of three years following each loss year. The Tax Commission (hereinafter Commission) disallowed the deduction, pronouncing that Matthews had not established a new business or industry in the State. Matthews paid the taxes under protest under § 65-2661, Code (Cum. Supp. 1975), and then brought the recovery action. The trial judge heard the case without a jury although appellant sought a jury trial. The questions on appeal are whether the judge erred in (1) denying a jury trial, (2) refusing to consider evidence of Matthews' activity in the State after 1965, and (3) finding that Matthews had not established a new business in 1965.

The facts are, with few exceptions, undisputed. Appellant is incorporated under the laws of Georgia and has its home office in Marietta. It engages in road building both within and without Georgia. Sometime in 1964 company officials discussed the possibility of subcontracting for a Greenville firm in the construction of I-20 in Richland County. On January 4, 1965 appellant started the job, with the Greenville firm. This was the first construction work appellant had undertaken in South Carolina.

Matthews spent considerable sums in start-up costs for the project. The company hired local labor and bought equipment at local dealers. The only office the company had in South Carolina in 1965 was the typical mobile-home office found at most construction sites. The supervisor for the job lived near the job site during the week and returned to Georgia on weekends. Some One Million Four Hundred Thousand ($1,400,000.00) Dollars was received by Matthews in 1965 in connection with the I-20 project; the accounting for 80-90% of this money was done at the on-the-job-site office. The I-20 job was the only construction work the company did in South Carolina in 1965. The only other activity of Matthews in South Carolina during that year was the submission of bids for other contracts.

The company qualified to do business in South Carolina, by filing with the Secretary of State, on November 29, 1965. From 1965 to 1974 Matthews operated continuously in the State, engaging in about seven construction contracts in addition to the I-20 one. During this period appellant filed income tax returns with respondent for each year. Appellant lost a total of about Seven Hundred Twenty-Two Thousand ($722,000.00) Dollars during 1965 through 1968; in 1969 the company turned a profit of about One Hundred Seven Thousand ($107,000.00) Dollars and in 1970, Two Hundred Fifty-Seven Thousand ($257,000.00) Dollars.

The I-20 job was a major project, lasting about three and one-half years for appellant. Mr. Robert E. Matthews, now

president of Matthews Corporation, testified that it was the intent of company officials, in 1964 and 1965, to go into business in South Carolina on a permanent basis.

Appellant's first argument is that Article I, Section 25 of the South Carolina Constitution requires a jury trial in this case. That section provides, "the right of trial by jury shall be preserved inviolate." The section has been interpreted by this Court as securing the right to a jury only in cases in which that right existed at the time of the adoption of the constitution in 1868; if the case is a statutory action, a jury will be allowed only if the action is in the nature of a suit triable at common law in 1868. *McGlohon v. Harlan,* 254 S. C. 207, 174 S. E. (2d) 753 (1970); *Richards v. Columbia,* 227 S. C. 538, 88 S. E. (2d) 683 (1955); *State v. Gibbes,* 109 S. C. 135, 95 S. E. 346 (1918); *Smith & Co. v. Bryce,* 17 S. C. 538 (1882).

The right to recover taxes from the sovereign was not recognized by this Court in 1868. The question remains whether the § 65-2662 action is in the nature of a common-law suit. The nature of the §§ 65-2661 and 65-2662 remedy has not been determined by this Court. The lower court found one case from another jurisdiction that construed a constitutional provision and a recovery statute, both similar to those of this State. In *Dexter Horton Building Company v. King County,* 10 Wash. (2d) 186, 116 P. (2d) 507 (1941), the court found the tax recovery suit to be based on an equitable principle, "constructive fraud", and upheld the hearing of the suit before a judge alone. Finding the suit as one in equity was important because of statutes that required a jury trial in all actions at law on issues of fact. See 116 P. (2d) at 509-511. The appellant argued that the action was one of debt, triable before a jury at common law. The court held that the constructive fraud doctrine applied and that the taxing agency held the paid-in taxes in trust, therefore equity was the exclusive avenue of relief. As further rebuttal to appellant's argument, the court cited one of

its previous decisions in which it said that the state was not entitled to interest on delinquent taxes, absent a statutory provision. The reason the state was not entitled to interest, the court said, was because a tax "is not a debt in the ordinary sense of the term." (116 P. (2d) at 511, the court paraphrasing language from its earlier decision).

Matthews also argues that its action is like a common-law debt action. We think *Dexter Horton* is helpful, but not dispositive, in refuting this argument. However, the U. S. Supreme Court held in *Wickwire v. Reinecke,* 275 U. S. 101, 48 S. Ct. 43, 72 L. Ed. 184 (1927), that the Seventh Amendment to the Constitution did not require a jury trial in a statutory action to recover taxes allegedly unjustly collected. And the Ninth Circuit Court of Appeals said specifically that a statutory action to test the validity of penalties assessed by the IRS was not like a common-law action of debt, and therefore was not required by the Seventh Amendment to be tried before a jury. *Olshausen v. C.I.R.,* 9 Cir., 273 F. (2d) 23 (1959), cert. denied, 363 U. S. 820, 80 S. Ct. 1256, 4 L. Ed. (2d) 1517. These federal cases offer better reasoning than does *Dexter Horton.* The principle of constructive fraud is a broad one and we would not rest our holding exclusively upon it. See generally 3 *J. Pomeroy, Equity Jurisprudence* § 922 *et seq.* (S. Symons, 5th ed. 1941).

The right to recover taxes from the State was created by statute, and was created after the adoption of our constitution. The right is not in the nature of a common-law action; the cases cited above recognize that the statutory recovery of taxes paid to the government is a unique proceeding. We conclude that the trial judge did not err in refusing appellant's demand for trial by jury.

Appellant's second argument is that the trial judge erred in not considering its activities in South Carolina after 1965. Matthews reasons that evidence of these activities is relevant to whether, in 1965, company officials intended to set

up a contracting business on a permanent basis in South Carolina. It is necessary to pay attention to this "intent" of the company because of the language of the statute:

(12) With respect only to taxpayers who have established a new business or industry in this State during the calendar year 1955 and thereafter, in addition to other deductions allowed by this chapter, there shall be allowed as a deduction from gross income a net operating loss carryover under the following rules:

(a) The net operating loss as herein defined for any year ending on or after December 31, 1955 may be carried forward to the next succeeding taxable year and annually thereafter for a total period of three years next succeeding the year of such operating loss, or until such net operating loss has been exhausted or absorbed by the taxable income of a succeeding year. The net operating loss deduction herein allowed shall be allowable only for the first three years of the operation of such new business or industry in this State. S. C. Code § 65-259(12), 1962.

Webster's Third International Dictionary defines "to establish" as "to bring into existence, create, make, start, originate, found or build usually as permanent or with permanence in view." Therefore consideration must be given to appellant's expressed intent to make permanent its business. The trial court found that appellant's post-1965 activities were irrelevant to whether it "established" a business in 1965. We believe the lower court's reasoning should be followed under the facts of this case.

The court correctly reasoned that whether a company has established a new business or industry must be determined after the company's initial year of operation in the State. For instance, if appellant had made a profit in 1966, and had deducted its 1965 loss, the Commission would have been required to decide whether appellant had "established" a new business in 1965. The General As-

sembly intended it to be apparent to the Commission, after a company's initial year of operation, whether the company had met the statute. Otherwise the statute would be not only unworkable but unfair. It would allow the Commission to consider several years' activity for some businesses and only one year's activity for others. The trial judge noted that had he considered evidence of Matthews' activity in the State after 1965, "not all of such evidence could be termed as favorable to the plaintiff's position." We agree. Further we hold that even if it was error to exclude such evidence, the evidence does not show that appellant established a new business in the State in 1965, within the terms of § 65-259(12).

Appellant's third argument is that it did establish a new business in South Carolina in 1965. We have already held that evidence of appellant's post-1965 activity does not show that appellant did so. Neither does the evidence of Matthews' actions during 1965. The trial judge correctly applied § 65-259(12), and correctly read the cases interpreting the section, in reaching his conclusion.

The closest precedent to the present case is *Chronicle Publishers, Inc. v. S. C. Tax Commission*, 244 S. C. 192, 136 S. E. (2d) 261 (1964). In that case a newly formed South Carolina corporation took over an existing newspaper enterprise. The corporation changed management, brought in new shareholders, and bought new equipment. But to the Court these actions were not enough:

According to the terms of the statute, the deduction is allowed only in favor of a taxpayer who has "established a new business or industry in the State." Plaintiff simply is not in this situation. Instead, it is a new corporation which has acquired and improved established businesses. 244 S. C. at 194, 136 S. E. (2d) at 262. Thus, we held that on the facts of the case *Chronicle Publishers* was not due the deduction.

The only other case construing the statute, *Southern Soya Corp. v. Wasson*, 252 S. C. 484, 167 S. E. (2d) 311 (1969), concerns the application of a procedural subsection [65-259(12)(e)] and is of little help. However, this case and *Chronicle Publishers* recognize a principle that applies in the present case: that a deduction is a matter of legislative grace; and that a statute allowing a deduction, if ambiguous, is construed strictly against the taxpayer. The language of § 65-259(12) does leave room for interpretation. What it takes to "establish a new business" is admittedly not obvious. The present case is therefore one to which the above-stated principle applies.

Even aside from a reading of the two cases cited above, we believe the lower court correctly implemented the intent of the legislature.

The intent of the legislature is apparent. Its objective is to encourage the establishment of new businesses and industries and thereby provide employment and ultimately additional revenue. Section 65-259(12) applies to foreign and domestic firms alike. The legislature obviously did not intend the statute to put local businesses at a competitive disadvantage. If an existing Greenville area contractor had done the I-20 job no deduction would be allowed. The Greenville contractor, called to work on I-20, would be merely extending its already established business. A construction firm must work wherever projects are undertaken and contracts awarded. Considering the nature of the road-building business, appellant's activity in South Carolina in 1965 was not that of establishing a new business but of merely pursuing its existing business on a new project in this State.

The trial judge correctly decided that appellant did not establish a new business or industry in this State in 1965.

We affirm the order of the lower court dismissing the complaint.

LEWIS, C. J., and LITTLEJOHN, NESS and RHODES, JJ., concur.