551 S.E.2d 263

UNISYS CORPORATION, Appellant/Respondent,

v.

The SOUTH CAROLINA BUDGET AND CONTROL BOARD DIVISION OF GENERAL SERVICES INFORMATION TECHNOLOGY MANAGEMENT OFFICE, as an agency of the State of South Carolina, as agent for the South Carolina Department of Health and Human Services (formerly the South Carolina Health and Human Services Finance Commission), and as agent for the South Carolina Department of Social Services; Voight Shealy, in his official capacities as Acting Information Technology Management Officer and Chief Procurement Officer of the Information Technology Management Office; Ronald E. Moore, in his official capacities as Technology Management Officer and Chief Procurement Officer of the Information Technology Management Office; the South Carolina Department of Health and Human Services; and the South Carolina Department of Social Services, Defendants,

Of whom The South Carolina Budget and Control Board Division of General Services Information Technology Management Office, as an agency of the State of South Carolina, as agent for the South Carolina Department of Health and Human Services (formerly the South Carolina Health and Human Services Finance Commission), and as agent for the South Carolina Department of Social Services; Ronald E. Moore, in his official capacities as Technology Management Officer and Chief Procurement Officer of the Information Technology Management Office; the South Carolina Department of Health and Human Services; and the South Carolina Department of Social Services are Respondents/Appellants.

No. 25342.

Supreme Court of South Carolina.

Heard June 6, 2001.

Decided Aug. 14, 2001.

Rehearing Denied Sept. 12, 2001.

John E. Johnston, Michael J. Giese, and James T. Hewitt, of Leatherwood Walker Todd & Mann, P.C., of Greenville, for appellant/respondent.

Marcus A. Manos, Wilburn Brewer, Jr., and Susan Batten Lipscomb, of Nexsen Pruet Jacobs & Pollard, L.L.P., of Columbia, for respondents/appellants.

MOORE, Acting Chief Justice:

This dispute involves the State's multi-million dollar contract with appellant Unisys Corporation for the implementation of a state-wide automated child support enforcement system as required under the federal Family Support Act of 1988. Unisys appeals the dismissal of its complaint. We affirm.

## FACTS

On February 22, 1993, respondent Information Technology Management Office (ITM Office) issued a Request for Proposal (RFP) soliciting bids for a child support enforcement system. The system was to be in effect by October 1, 1995. After a bidder's contest to the February RFP, an amended

RFP was issued on October 8, 1993. This RFP was further amended six times in October and early November 1993. On November 9, Unisys submitted a successful bid. As a result, on December 30, 1993, Unisys signed an agreement to provide the system. This agreement was signed by respondent Budget and Control Board on January 27, 1994.

More than four years later, in September 1998, respondents (collectively "the State") submitted a request for resolution of a contract controversy pursuant to the South Carolina Consolidated Procurement Code, S.C.Code Ann. § 11–35–4230 (Supp. 2000). The request was submitted to Ronald Moore, the Chief Procurement Officer (CPO) for the ITM Office. The State alleged various breaches of contract by Unisys, including the failure to meet federally mandated deadlines for the system to be operational. Further, it alleged fraud in the inducement of the contract, and unfair and deceptive acts in violation of the South Carolina Unfair Trade Practices Act, S.C.Code Ann. § 39–5–20 (1985) (SCUTPA). Unisys responded to the State's request for resolution by moving for dismissal on several grounds asserting essentially that the CPO lacked jurisdiction.[1]

Unisys then filed this action in circuit court seeking damages for breach of contract, a declaratory judgment regarding the inapplicability of the Procurement Code on jurisdictional and constitutional grounds, and an injunction against the State's proceeding under the Procurement Code. The State answered and filed a counterclaim alleging breach of contract, breach of warranty, fraud in the inducement, and a violation of SCUTPA.[2] The State then moved to dismiss under Rule 12(b)(1), (6), and (8), SCRCP, on the grounds the circuit court lacked subject matter jurisdiction of the dispute between the parties which was governed by the Procurement Code, Unisys had failed to state facts sufficient to constitute the causes of

---

1. On the merits, Unisys alleged the State had breached the contract by failing to meet its obligations including inadequate payment to Unisys in an amount totaling approximately $8.5 million.

2. The State claimed it was exposed to $117 million per year in federal sanctions because of Unisys's failure to complete and implement the system for which it had contracted. Further, it sought an injunction "requiring Unisys to give the fully documented, latest version of the [system] source code to the State."

action asserted, and there was another action pending between the same parties for the same claim.

The trial judge found the Procurement Code was the exclusive means of resolving the dispute between the parties and disposed of Unisys's constitutional challenges to the Procurement Code proceeding. He dismissed Unisys's complaint and the State's counterclaims but enjoined the pursuit of the Procurement Code proceeding pending this appeal. Unisys appealed the dismissal of its complaint and the State cross-appealed the injunction pending appeal.

## UNISYS'S APPEAL

### 1. Novel issue

Unisys contends the trial judge erred in disposing of its constitutional challenges to the Procurement Code proceeding on a Rule 12(b)(6) motion to dismiss because these are novel and complex issues. We disagree.

■ As a general rule, important questions of novel impression should not be decided on a motion to dismiss. Where, however, the dispute is not as to the underlying facts but as to the interpretation of the law, and development of the record will not aid in the resolution of the issues, it is proper to decide even novel issues on a motion to dismiss. *Evans v. State*, 344 S.C. 60, 543 S.E.2d 547 (2001). Here, the questions involved are questions of law and Unisys points to no factual issues that require further development. This issue is without merit.

### 2. Exclusive jurisdiction of circuit court

■ The trial judge found the procedure set forth in the Procurement Code, as provided in § 11–35–4230, is the exclusive means of resolving this dispute. Unisys contends this was error because the circuit court has exclusive jurisdiction under S.C.Code Ann. § 15–77–50 (1976).[3]

Section 15–77–50 provides:

---

3. Unisys also cites art. V, § 11, of our State Constitution which vests the circuit court with general jurisdiction in civil cases as follows:

The circuit courts of this State are hereby vested with jurisdiction to hear and determine all questions, actions and controversies, other than those involving rates of public service companies for which specific procedures for review are provided in Title 58, affecting boards, commissions and agencies of this State, and officials of the State in their official capacities in the circuit where such question, action or controversy shall arise.

■ Unisys contends § 15–77–50 vests exclusive jurisdiction in the circuit court under *Kinsey Constr. Co. v. S.C. Dep't of Mental Health*, 272 S.C. 168, 249 S.E.2d 900 (1978). *Kinsey* involved two breach of contract actions against the Department of Mental Health. The Department argued it enjoyed sovereign immunity from actions on a contract and that the exclusive remedy available to the plaintiffs was limited to that allowed under former § 2-9-10 [4] which provided:

All claims for the payment for services rendered or supplies furnished to the State shall be presented to the State Budget and Control Board by petition, fully setting forth the facts upon which such claim is based, together with such evidence thereof as the Board may require. The petition shall be filed with the chairman of the Board at least twenty days prior to the convening of the General Assembly.

The Court held that by entering a contract, the State waives its sovereign immunity and consents to be sued for breach thereof. Further, § 2-9-10 was not the exclusive remedy available to plaintiffs in light of § 15–77–50 which vests jurisdiction of civil actions against the State in the circuit court.

---

The Circuit Court shall be a general trial court with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, and shall have such appellate jurisdiction as provided by law.

To the extent Unisys's brief may be read to argue that this constitutional provision in itself guarantees the circuit court's jurisdiction over its suit, this argument is incorrect. Article X, § 10, provides: "The General Assembly may direct, by law, in what manner claims against the State may be established and adjusted." Accordingly, jurisdiction over actions against the State is established by the General Assembly and is not endowed by the Constitution.

4. Repealed by 1981 S.C. Act No. 148, § 14.

We decline to follow *Kinsey*[5] in this case. First, *Kinsey* is distinguishable from the case at hand. In *Kinsey*, § 15–77–50 was enacted *after* the limited remedy provided in § 2–9–10.[6] In contrast, here § 11–35–4230 is the later statute and therefore takes precedence over § 15–77–50. *See Hodges v. Rainey*, 341 S.C. 79, 533 S.E.2d 578 (2000) (more recent and specific legislation controls if there is a conflict between two statutes).

■ Moreover, five years before *Kinsey*, in *Harrison v. South Carolina Tax Comm'n*, 261 S.C. 302, 199 S.E.2d 763 (1973), we specifically held that § 15–77–50 is not a blanket waiver of sovereignty but is essentially a venue statute governing instances where the State is subject to suit.[7] *Kinsey* does not attempt to distinguish or overrule *Harrison* but discords with *Harrison*'s essential conclusion that § 15–77–50 is not a general waiver of sovereign immunity. If the *Kinsey* court were actually following *Harrison*, as it purports to do,[8] it would have found the State had waived its immunity only to the extent permitted under § 2–9–10. We find the decision in *Kinsey* conflicts with the basic principle that a statute waiving the State's immunity from suit, being in derogation of sovereignty, must be strictly construed. *Truesdale v. South Carolina Highway Dep't*, 264 S.C. 221, 213 S.E.2d 740 (1975), *overruled in part on other grounds, McCall v. Batson, supra; Jeff Hunt Mach. Co. v. South Carolina State Highway Dep't.*, 217 S.C. 423, 60 S.E.2d 859 (1950). Accordingly, we now overrule *Kinsey* and reaffirm *Harrison*'s interpretation of § 15–77–50 as a venue statute.

---

**5.** *Kinsey* was expressly overruled in *McCall v. Batson*, 285 S.C. 243, 247, 329 S.E.2d 741, 743 (1985), "to the extent [it holds] that an action may not be maintained against the State without its consent."

**6.** Section 15–77–50 was enacted in 1954, S.C. Act. No. 154; § 2–9–10 was enacted in 1878, S.C. Act. No. 459.

**7.** *See also Whetstone v. South Carolina Dep't of Highways and Pub. Transp.*, 272 S.C. 324, 252 S.E.2d 35 (1979) (confirming § 15–77–50 is essentially a venue statute).

**8.** The *Kinsey* opinion cites *Harrison* as "recognizing jurisdiction in the circuit court and providing for venue in cases in which the sovereign immunity doctrine is inapplicable." *Kinsey*, 272 S.C. at 174, 249 S.E.2d at 903.

In conclusion, § 15–77–50 does not trump § 11–35–4230 to vest exclusive original jurisdiction in the circuit court.

### 3. Application of § 11–35–4230.

The trial judge found § 11–35–4230 vested the CPO and Procurement Review Panel (Review Panel) with exclusive original jurisdiction over the dispute between Unisys and the State. This section provides in large part:

**§ 11–35–4230. Authority to resolve contract and breach of contract controversies.**

(1) Applicability. This section applies to controversies between the State and a contractor or subcontractor when the subcontractor is the real party in interest, which arise under or by virtue of a contract between them including, but not limited to, controversies based upon breach of contract, mistake, misrepresentation, or other cause for contract modification or recision. The procedure set forth in this section shall constitute the exclusive means of resolving a controversy between the State and a contractor or subcontractor concerning a contract solicited and awarded under the provisions of the South Carolina Consolidated Procurement Code.

(2) Request for Resolution; Time for Filing. Either the contracting state agency or the contractor or subcontractor when the subcontractor is the real party in interest may initiate resolution proceedings before the appropriate chief procurement officer by submitting a request for resolution to the appropriate chief procurement officer in writing setting forth the general nature of the controversy and the relief requested with enough particularity to give notice of the issues to be decided. . . .

(3) Duty and Authority to Attempt to Settle Contract Controversies. Prior to commencement of an administrative review as provided in subsection (4), the appropriate chief procurement officer shall attempt to settle by mutual agreement a contract controversy brought under this section. The appropriate chief procurement officer shall have the authority to approve any settlement reached by mutual agreement.

(4) Administrative Review and Decision. If, in the opinion of the appropriate chief procurement officer, after reasonable attempt, a contract controversy cannot be settled by mutual agreement, the appropriate chief procurement officer shall promptly conduct an administrative review and shall issue a decision in writing within ten days of completion of the review. The decision shall state the reasons for the action taken.

. . .

(6) Finality of Decision. A decision under subsection (4) of this section shall be final and conclusive, unless fraudulent, or unless any person adversely affected requests a further administrative review by the Procurement Review Panel under Section 11–35–4410(1) within ten days of the posting of the decision in accordance with Section 11–35–4230(5). . . .

Unisys contends the trial judge's ruling was erroneous for the following reasons.

### a. *Legislature's authority to enact § 11–35–4230*

■ Article X, § 10, of our State Constitution provides: "The General Assembly may direct, by law, in what manner claims against the State may be established and adjusted." Unisys contends this section limits the General Assembly to providing for jurisdiction in matters *against* the State and therefore does not authorize § 11–35–4230 because that statute applies as well to suits brought *by* the State.

■ The State Constitution is a limitation upon and not a grant of power to the General Assembly. *Army Navy Bingo, Garrison No. 2196 v. Plowden,* 281 S.C. 226, 314 S.E.2d 339 (1984). "The legislative power of the General Assembly is not dependent upon specific constitutional authorization. The State Constitution only limits the legislature's plenary powers. Thus, the General Assembly may enact any law not prohibited, expressly or by clear implication, by the State or Federal Constitutions." *Johnson v. Piedmont Mun. Power Agency,* 277 S.C. 345, 350, 287 S.E.2d 476, 479 (1982). There is no constitutional provision limiting the legislature's power to establish jurisdiction for actions brought by the State and the legislature may provide for such actions as it sees fit.

We conclude art. X, § 10, simply limits claims against the State to those allowed by the legislature and does not invalidate § 11–35–4230.

### b. Construction of § 11–35–4230

■ Unisys contends the language of § 11–35–4230 is insufficient to vest exclusive jurisdiction in the CPO and Review Panel. Subsection (1) of this statute provides: "The procedure set forth in this section shall constitute *the exclusive means* of resolving a controversy between the State and a contractor . . . concerning a contract solicited and awarded under the provision of the South Carolina Consolidated Procurement Code." (emphasis added). Unisys claims this language means that when the parties *voluntarily* chose to proceed under the Procurement Code, § 11–35–4230 is the exclusive means of undertaking that procedure. Unisys contends the term "exclusive means," when strictly construed, is not sufficient to wrench jurisdiction from the circuit court. We disagree.

This Court has used the terms "exclusive means," "exclusive remedy," and "exclusive jurisdiction" synonymously when discussing the Workers' Compensation Act. *See* S.C.Code Ann. § 42–1–540 (1985) (providing the rights and remedies provided under that Act "shall exclude all other rights and remedies)." *See, e.g., Loges v. Mack Trucks, Inc.*, 308 S.C. 134, 417 S.E.2d 538 (1992) (exclusive means); *Carter v. Florentine Corp.*, 310 S.C. 228, 423 S.E.2d 112 (1992) (exclusive remedy); *McSwain v. Shei*, 304 S.C. 25, 402 S.E.2d 890 (1991) (exclusive jurisdiction). Thus, the term "exclusive means" has been used to indicate exclusivity of jurisdiction.

■ Further, because a statute waiving the State's immunity must be strictly construed, the State can be sued only in the manner and upon the terms and conditions prescribed by the statute. *Jeff Hunt Mach. Co. v. South Carolina State Highway Dep't, supra.* The term "exclusive means" must therefore be strictly construed to limit suits on contracts with the State to the forum provided in § 11–35–4230. Application of the strict construction rule, contrary to Unisys's assertion, results in upholding the exclusivity provision of § 11–35–4230.

### c. Effective date

■ Under ¶ 3.3, the contract between the State and Unisys provides:

Any action at law, suit in equity or judicial proceeding for the enforcement of this contract or any provision thereof shall be instituted only in the Circuit Court in the County of Richland, State of South Carolina.

Unisys contends this provision, rather than § 11–35–4230, determines in what forum this controversy must be heard.

■ Unisys argues the "exclusive means" provision of § 11–35–4230 was added by statutory amendment "effective for bids or proposals solicited on or after July 1, 1993," [9] and it therefore does not apply here because the original RFP was issued on February 25, 1993, *before* this provision became effective. We disagree. The contract itself recites that it is based on an RFP issued on October 8, 1993. Since this RFP was issued *after* the pertinent 1993 amendment, the amendment applies.

■ Further, we find the "exclusive means" provision of § 11–35–4230 overrides the contract provision to the extent it requires that any suit on the contract be brought in circuit court.[10] Contractual relationships formed pursuant to the Procurement Code are highly regulated contracts. We have recognized that the underlying goals of the Procurement Code serve important public interests concerning this particular contractual relationship. *Ray Bell Constr. Co. v. School Dist. of Greenville County,* 331 S.C. 19, 501 S.E.2d 725 (1998); *see generally* S.C.Code Ann. § 11–35–20 (Supp.2000) (purpose and policies of Procurement Code). We now hold contracts formed pursuant to the Procurement Code are deemed to incorporate the applicable statutory provisions and such provisions shall prevail. *Accord S.J. Amoroso Constr. Co. v. United States,* 12 F.3d 1072 (Fed.Cir.1993) (mandatory contract

---

**9.** 1993 S.C. Act No. 178, § 38.

**10.** The State contends the statute controls because subject matter jurisdiction cannot be bestowed by consent of the parties. As discussed in footnote 13, *infra,* however, the exhaustion of administrative remedies, which this case involves, does not pertain to subject matter jurisdiction. *Ward v. State,* 343 S.C. 14, 538 S.E.2d 245 (2000).

clause that expresses a significant or deeply ingrained strand of public procurement policy is considered to be included in a contract by operation of law); *see generally Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947) (anyone entering contract with federal government takes the risk of accurately ascertaining limit of government agent's authority as defined by legislation); *cf. Jordan v. Aetna Cas. & Sur. Co.*, 264 S.C. 294, 214 S.E.2d 818 (1975) (statutory provisions relating to an insurance contract are deemed part of the contract as a matter of law and prevail over conflicting contractual provisions).

Accordingly, to the extent ¶ 3.3 of the contract conflicts with § 11–35–4230, it is overridden. We therefore construe this contract provision to require simply that the circuit court of Richland County is the proper venue for any appeal of the Review Panel's decision. *See* S.C.Code Ann. § 11–35–4410(6) (Supp.2000) (appeal of Review Panel's decision is to circuit court).

### 4. Right to jury trial and due process.

Unisys contends that requiring it to proceed under the Procurement Code violates its constitutional right to a jury trial and deprives it of procedural due process. We disagree.

### a. Right to jury trial

Article I, § 14, of our State Constitution provides: "The right of trial by jury shall be preserved inviolate." Unisys claims that under this provision, it is entitled to a jury trial on its contract controversy with the State.

It is well-settled that art. I, § 14, secures the right to a jury trial only in cases in which that right existed at the time of the adoption of the constitution in 1868. *C.W. Matthews Contracting Co. v. South Carolina Tax Comm'n*, 267 S.C. 548, 230 S.E.2d 223 (1976); *Richards v. City of Columbia*, 227 S.C. 538, 88 S.E.2d 683 (1955); *State v. Gibbes*, 109 S.C. 135, 95 S.E. 346 (1918). The right to a jury trial does not apply to actions against the sovereign that were not recognized in 1868. *C.W. Matthews Contracting, supra; accord Ex parte Bakelite Corp.*, 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789 (1929) (Seventh Amendment does not preserve right to jury trial on claims

against the federal government because they were not recognized at common law).

At the time our constitution was adopted in 1868, the State was immune from suit on a contract. *Treasurers v. Cleary,* 37 S.C.L. (3 Rich. Law) 372 (1832) (action on debt against the State); *see also Hodges v. Rainey, supra* (observing that in 1934 the State was protected by total sovereign immunity and could be sued in tort or contract only when it consented). Accordingly, art. I, § 14, does not guarantee the right to a jury trial on a contract with the State.

### b. Due process

Unisys contends the proceeding available under the Procurement Code violates art. I, § 22, of our State Constitution on several grounds. This provision states:

No person shall be finally bound by a judicial or quasi-judicial decision of an administrative agency affecting private rights except on due notice and an opportunity to be heard; nor shall he be subject to the same person for both prosecution and adjudication; nor shall he be deprived of liberty or property unless by a mode of procedure prescribed by the General Assembly, and he shall have in all such instances the right to judicial review.

██ Unisys contends that CPO Ronald Moore, who is the "appropriate CPO" referred to in § 11–35–4230 to hear this controversy,[11] is not impartial because he was involved in the contract negotiations and amendments and investigated disputes as they arose under the contract. Mr. Moore has in fact recused himself and has designated Voight Shealy, the Assistant Director of the Office of General Services, to serve as acting CPO in this matter. Unisys complains this substitution is unauthorized. We disagree.

Section 11–35–840 (Supp.2000) provides:

Subject to the regulations of the board, the chief procurement officers may delegate authority to designees or to any department, agency, or official.

---

11. Section 11–35–310(5) and (6) indicate the "appropriate chief procurement officer" is the head of the Information Technology Office of the State. This is Ronald Moore.

This section is part of Article 3 of the Procurement Code entitled, "Procurement Organization." It is therefore a provision with general application to all functions of the CPO including those functions regarding dispute resolutions under § 11–35–4230. Accordingly, Mr. Moore may delegate his authority to hear this matter.

Unisys further complains that Mr. Shealy is not competent to hear this matter and, in fact, no one in the ITM Office has sufficient expertise and none is qualified to serve. Conversely, it claims everyone in the ITM Office was "intimately involved" in this project and cannot be impartial.

■ Under § 11–35–4230(6), Unisys may seek a review of the CPO's decision by the Review Panel. This review is *de novo*. S.C.Code Ann. § 11–35–4410(1) (Supp.2000). An adequate *de novo* review renders harmless a procedural due process violation based on the insufficiency of the lower administrative body. *Ross v. Med. Univ. of South Carolina*, 328 S.C. 51, 492 S.E.2d 62 (1997) (administrator's lack of impartiality cured by *de novo* review before impartial panel). The members of the Review Panel are not ITM Office employees, *see* § 11–35–4410(d), and there is no basis for questioning their impartiality. As far as expertise, we question whether a circuit court judge would have any more expertise in the area of procurement contracts. Moreover, technical expertise is not a requirement of due process.

■ Unisys further claims a due process violation because the General Assembly has established no specific procedures applicable to dispute resolutions before the CPO. We rejected a similar argument in *Tall Tower, Inc. v. South Carolina Procurement Review Panel*, 294 S.C. 225, 363 S.E.2d 683 (1987), and held the Review Panel's failure to formally adopt rules and procedures is not fatal to due process requirements where there is an opportunity to be heard at a meaningful time and in a meaningful manner.

In this case, the procedure set forth by the Review Panel provides for representation by counsel, opening statements, the presentation of evidence, direct, cross, re-direct, and re-cross examination of witnesses, and closing statements. The complaining party presents its case first and bears the burden of proof. The Review Panel may receive additional evidence

although issues are generally limited to those presented to the CPO. Since this proceeding meets due process requirements and is *de novo*, Unisys can show no substantial prejudice from the lack of an established procedure before the CPO. *Ross, supra; Tall Tower, supra.*

Finally, Unisys contends an administrative body cannot rule on the constitutionality of statutes and therefore it should not be required to proceed under the Procurement Code. *See Ward v. State*, 343 S.C. 14, 538 S.E.2d 245 (2000) (administrative body cannot rule on constitutionality of statute). This argument overlooks the fact that the circuit court has already ruled on Unisys's constitutional challenges to the Procurement Code and these issues will not be before the CPO or the Review Panel.

In conclusion, the trial judge properly found no due process violation.

### 5. Claims for fraud, SCUTPA violation, and punitive damages.

Unisys contends the CPO and Review Panel have no authority to resolve the State's claims against Unisys alleging fraud in the inducement, unfair trade practices under SCUTPA, and punitive damages based on Unisys's allegedly willful misrepresentations. It contends this contract controversy should therefore proceed in circuit court as a matter of judicial economy.

Section 11–35–4230(1) specifically provides it is the exclusive means of resolving controversies between the State and a contractor that "arise under or by virtue of a contract between them *including, but not limited to*, controversies based upon breach of contract, mistake, misrepresentation, or other cause for contract modification or recision." (emphasis added). Further, S.C.Code Ann. § 11–35–4320 (Supp.2000) provides the CPO or the Review Panel "may award such relief as is necessary to resolve the controversy as allowed by the terms of the contract *or by applicable law.*" (emphasis added). Accordingly, the legislature has clearly indicated its intent that the administrative proceeding under the Procurement Code applies to the State's claims in this case for fraud in the inducement, which involves misrepresentation, and punitive

damages. *See Smyth v. Fleischmann,* 214 S.C. 263, 52 S.E.2d 199 (1949) (punitive damages recoverable for fraudulent act independent of breach). Further, any punitive damages award is ultimately reviewable by the circuit court on appeal. *See generally Gamble v. Stevenson,* 305 S.C. 104, 406 S.E.2d 350 (1991) (providing for review of punitive damages award by judge).

▪ The State's cause of action under SCUTPA is a different matter. S.C.Code Ann. § 39-5-40(a) (1985) exempts from SCUTPA:

Actions or transactions permitted under laws administered by any regulatory body or officer acting under statutory authority of the State or the United States or actions or transactions permitted by any other South Carolina State law.

In *Ward v. Dick Dyer and Assocs., Inc.,* 304 S.C. 152, 403 S.E.2d 310 (1991), we rejected a "general activity" analysis that would exempt all activities regulated by an administrative body. We retained, however, the exemption recognized in *State ex rel. McLeod v. Rhoades,* 275 S.C. 104, 267 S.E.2d 539 (1980), for a security transaction because it is a "unique transaction . . . . subject to strict regulation and must comply with stringent requirements." 304 S.C. at 155 n. 1, 403 S.E.2d at 312 n. 1. Similarly, we hold transactions under the Procurement Code are exempt from SCUTPA and the State's SCUTPA cause of action is not a viable claim.[12]

The fact that the SCUTPA cause of action is not viable, however, does not effect the determination whether administrative remedies must be exhausted but simply means the SCUTPA action is subject to dismissal in either forum. In conclusion, judicial economy does not mandate that this action be heard in circuit court.

### 6. *Dismissal under Rule 12(b)*

▪ Since Unisys is required to exhaust its administrative remedies as a matter of law, dismissal under Rule 12(b)(6) for failure to state a claim was proper. Further, because an action was pending pursuant to the Procurement Code as

---

12. Our holding does not infringe on the Attorney General's right of action on behalf of the State pursuant to SCUTPA. *See, e.g.,* S.C.Code Ann. §§ 39-5-50 through -120 (1985).

required when this action was brought, dismissal was also proper under Rule 12(b)(8). *See Southern Ry. Co. v. Order of Ry. Conductors,* 210 S.C. 121, 41 S.E.2d 774 (1947) (exhaustion of remedies will preclude original resort to courts where statute by express terms gives exclusive jurisdiction to administrative agency).[13]

## STATE'S CROSS–APPEAL

On cross-appeal, the State challenges the trial judge's temporary injunction against the Procurement Code proceeding during the pendency of this appeal. A stay pending appeal is moot upon disposition of the appeal on the merits. *South Carolina Tax Comm'n v. Gaston Copper Recycling, Corp.,* 316 S.C. 163, 170 n. 1, 447 S.E.2d 843, 844 n. 1 (1994); *see generally Seabrook v. City of Folly Beach,* 337 S.C. 304, 523 S.E.2d 462 (1999) (issue moot where decision on appeal will have no practical effect). Accordingly, we need not address this issue.

**AFFIRMED.**

WALLER, BURNETT, PLEICONES, JJ., and Acting Justice C. VICTOR PYLE, Jr., concur.

---

**13.** We note that, contrary to the trial judge's ruling, the required exhaustion of administrative remedies goes to the prematurity of a case and not subject matter jurisdiction. *Ward v. State, supra; see generally Dove v. Gold Kist, Inc.,* 314 S.C. 235, 442 S.E.2d 598 (1994) (subject matter jurisdiction is the power to hear and determine cases of the general class to which the proceedings in question belong). Accordingly, Unisys's complaint was not properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).